IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RICHARD FERNANDEZ, JR.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **CIVIL ACTION NO: 4:25-cv-04007** |
| **v.** | § | |
| | § | |
| **SIG SAUER, INC., and** | § | |
| **CTC GUNWORKS LLC** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Richard Fernandez, Jr. ("Officer Fernandez") files his First Amended Complaint against Defendants Sig Sauer, Inc. ("SIG") and CTC Gunworks LLC ("CTC" and collectively with SIG, "Defendants"),[1] and in support thereof, respectfully shows the Court the following:

## I.
## INTRODUCTION

1.      Officer Fernandez, an experienced senior police officer with the Houston Police Department, was shot on January 20, 2025 while directing traffic for

---

[1] Plaintiff files this First Amended Complaint expressly without waiving the right to seek remand of this case to state court or in any way conceding that the Court has diversity or federal question jurisdiction. Plaintiff files this First Amended Complaint solely for the purpose of clarifying and amplifying the claims alleged as permitted by Fifth Circuit precedent. *See Palmquist v. Hain Celestial Grp., Inc.*, 103 F.4th 294, 303 (5th Cir. 2024), *cert. granted in part*, 145 S. Ct. 1960, 221 L. Ed. 2d 737 (2025); *see also Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999).

*Plaintiff's First Amended Complaint*

Martin Luther King, Jr. Day community events.  The reality that police officers put themselves in danger every single day comes as no surprise, but the circumstances surrounding this shooting are nothing short of shocking. Officer Fernandez's own gun went off, while fully holstered, and without anyone ever pulling the trigger. There have been hundreds of other instances in which this particular gun—the SIG P320 semi-automatic pistol—goes off by itself, but SIG and CTC have failed to take the obvious and reasonable steps of either modifying the P320's defective design or at the very least, warning the general public of its propensity to unintentionally discharge. As a result of these and other failures, Officer Fernandez sustained life-altering injuries.

2.      SIG is a leading designer and manufacturer of firearms. SIG's firearms are used by the U.S. military, law enforcement agencies all over the country, and hundreds of thousands of civilians throughout the State of Texas and the United States. Despite its popular and commercially successful status, SIG continues to market and sell fatally defective guns both directly, and through retail sellers, and it has done utterly nothing to recall the millions of defective P320 semi-automatic pistols since the P320 hit the market in 2014.

3.      SIG's design of the P320 pistol is unreasonably dangerous for its intended uses. The weapon is defective because it unintentionally discharges when

*Plaintiff's First Amended Complaint*

the user did not pull the trigger or, as in this case, when the gun is holstered and the user is not even handling the gun at all.

4.    Instead of acknowledging the dangerous defects associated with this weapon, SIG and its sellers have doubled-down claiming there is nothing wrong with the P320's design and any contention otherwise, is simply "anti-gun propaganda driven by the mainstream media and greedy trial attorneys." Knowing full well that there are serious problems with this gun, SIG instead allows gunowners to play Russian Roulette as to the next time the P320 will spontaneously discharge without anyone ever pulling the trigger. It has chosen to ignore the increasingly prevalent risk that P320s's unintentional discharges will cause serious injury or death.

5.    Not only has SIG failed to acknowledge the P320's fatally defective design, but remarkably, it has continued to tout its safety.[2]

**SAFETY WITHOUT COMPROMISE**

Safety isn't negotiable. The P320 maximizes peace of mind with a robust safety system including both a striker safety and a disconnect safety, and because of its innovative 3-point takedown safety, never again will you need to pull the trigger to disassemble your pistol.

SIG's website also includes a video which highlights the "The Safety Features of the P320." In it, SIG claims that the P320 will only fire once each of the following five events occur:

---

[2] https://www.sigsauer.com/firearms/pistols/p320.html.

*Plaintiff's First Amended Complaint*



This claim is demonstrably false because there have been hundreds of reported cases nationwide of the P320 discharging without the trigger ever being pulled, including this one.

6.      For instance, in November of 2022, thirty-three (33) plaintiffs filed suit against SIG in the United States District Court for the District of New Hampshire claiming that their P320s discharged without the trigger ever being pulled, just as it did here.[3] In February of 2019, a class action lawsuit was also brought against SIG in the United States District Court for the Southern District of Texas, which related

---

[3] *See* Case No. 1:22-cv-00536-JL-AJ, *Fernando Armendariz and Miriam Trebino, et al. v. Sig Sauer, Inc.*, in the United States District Court for the District of New Hampshire, ECF 1. The case has since been consolidated with several others and now there are over fifty (50) plaintiffs in this consolidated proceeding. *See e.g.* ECF 86.

*Plaintiff's First Amended Complaint*

to the P320's propensity to "drop fire"—*i.e.*, inadvertently discharge a round of ammunition when the pistol was dropped on the ground.[4] In that case, the Original Complaint references several instances when the P320 inadvertently discharged, including one where, like here, the pistol remained fully holstered and was not dropped at all.[5]

7.      The P320's propensity to "go off by itself" has also been widely reported in the press. *See e.g.*:

- Kathy McCormack, *Wounded officers sue Sig Sauer, say gun goes off by itself*, ASSOCIATED PRESS, Dec. 2, 2022, https://www.boston.com/news/local-news/2022/12/02/wounded-officers-sue-sig-sauer-say-gun-goes-off-by-itself/.

- Ashley Seats, *Milwaukee police union sues city over firearm safety concerns*, FOX6, Sept. 20, 2022, https://www.fox6now.com/news/milwaukee-police-union-lawsuit-firearm-safety-concerns.

- Derrick Rose, *MPD requested Sig Sauer install missing gun part days after first accidental shooting, emails show*, GUNS.COM, Sept. 21, 2022, https://www.wisn.com/article/mpd-requested-sig-sauer-install-missing-gun-part-days-after-first-accidental-shooting-emails-show/41322844.

- Matthew Cox, *Sig Sauer Faces $10 Million Lawsuit over P320 Pistol After Alleged Accidental Discharge Wounds Federal Agent*, MILITARY.COM, Feb. 19, 2021, https://www.military.com/daily-

---

[4] *See* Case No. 4:19-cv-00585, *Dante Gordon, individually and on behalf of all others similarly situated v. SIG Sauer, Inc.*, in the United States District Court for the Southern District of Texas, ECF 1.

[5] *Id*., at ¶ 30.

*Plaintiff's First Amended Complaint*

news/2021/02/19/sig-sauer-faces-10-million-lawsuit-over-p320-pistol-after-alleged-accidental-discharge-wounds.html.

- Champe Barton and Tom Jackson, *Popular handgun fires without anyone pulling the trigger, victims say*, THE WASHINGTON POST, Apr. 11, 2023, https://www.washingtonpost.com/dc-md-va/2023/04/11/victims-say-sig-sauer-p320-fires-on-own/.

- Mike Beaudet, *Latest misfire by Sig Sauer handgun injures elite special forces solider in Canada*, WCVB5ABC, May 3, 2021, https://www.wcvb.com/article/latest-misfire-by-sig-sauer-handgun-injures-elite-special-forces-soldier-in-canada/36321986.

8.    In response to the ever-growing number of incidents of the P320 unintentionally discharging, several law enforcement agencies and training academies across the country have banned further use of the P320, including the Dallas Police Department,[6] the Marble Falls Police Department, the Milwaukee Police Department,[7] the Washington State Criminal Justice Training Commission, the Northern California Regional Public Safety Training Authority, SEPTA Transit Police in Philadelphia, the Chicago Police Department, and most recently, the Houston Police Department. The U.S. Department of Homeland Security has also

---

[6] The Dallas Police Department banned further use of the P320 in 2017.

[7] The Milwaukee Police Department announced that it would transition its officers' service weapons, replacing the P320 with a Glock pistol, in October of 2022.

*Plaintiff's First Amended Complaint*

recently prohibited U.S. Immigration and Customs Enforcement (ICE) Authorized

Officers from carrying the P320 as their duty weapon.[8]

9.      Feeling this mounting pressure, SIG's PR strategy imploded. On March

7, 2025, it issued a blistering statement which wholly deflects any responsibility for

the *hundreds* of instances in which the P320 has fired without a trigger pull, usually

causing grave injuries to law enforcement officers, veterans, or other members of

the *pro*-gun community, like it did in this case. The statement, titled "The Truth

About the P320," reads in part:

> The P320 CANNOT, under any circumstances, discharge without a
> trigger pull – that is a fact. The allegations against the P320 are nothing
> more than individuals seeking to profit or avoid personal responsibility.
>
> Recently, anti-gun groups, members of the mainstream media, trial
> attorneys, and other uninformed and agenda-driven parties have
> launched attacks on one of SIG SAUER's most trusted, most tested,
> and most popular products - the P320 pistol.
>
> *        *        *
>
> Claims that unintended discharges are anything more than negligent
> handling and/or manufactured lies to support an anti-gun, anti-SIG
> agenda are false.  Furthermore, lawsuits claiming that the P320 is
> capable of firing without the trigger being pulled have been dismissed
> in courtrooms around the country.  In addition, multiple plaintiffs' so-
> called experts have conceded, it is not possible for the P320 to discharge
> unless the trigger is fully actuated.
>
> The rhetoric is high, and we can no longer stay silent while lawsuits run
> their course, and clickbait farming, engagement hacking grifters
> continue their campaign to highjack the truth for profit. Enough is
> enough.  From the courts of law to the court of public opinion we will

---

[8] Nearly all of these decisions to ban further use of the P320 were made in response to an officer
or service member being shot by a spontaneous discharge.

*Plaintiff's First Amended Complaint*

combat the lies and misinformation with the truth.  SIG SAUER stands behind the quality, safety, and design of all our products – especially the P320.

Industry, take notice; what's happening today to SIG SAUER with the anti-gun mob and their lawfare tactics will happen tomorrow at another firearms manufacturer, and then another.  Today, for SIG SAUER - it ends.[9]

10.     Since then, SIG has been the subject of ridicule amongst the online gun community.[10] And since then, there have been even more instances of the P320 firing without a trigger pull. One incident occurred on April 12, 2025 at the Achilles Heel Tactical gun range in Knoxville, Tennessee and was captured on video.[11]  Within days, Achilles Heel Tactical issued a statement banning further use of the P320 from its classes, training center, and training events "[d]ue to the safety hazard" the P320 poses. Another incident occurred on June 24, 2025 in Ceres, California where a school resource officer was injured while her P320 remained holstered.

11.     Implicitly acknowledging the major problems with the P320's design, SIG recently (and quietly) revised the P320 operator's manual, which now advises: "THE MOST EFFECTIVE SAFETY IS TO CARRY YOUR PISTOL WITHOUT

---

[9] https://www.sigsauer.com/blog/the-truth-about-the-p320.

[10] *See e.g.* Brandon Herrera, *Sig is Gaslighting You*, YOUTUBE (Mar. 17, 2025), *available at* https://www.youtube.com/watch?v=2uHy8YOQexo (describing SIG's statement as "Olympic-level corporate gaslighting").

[11] Achilles Heel Tactical, *SIG P320 Debrief & Statement*, YOUTUBE (Apr. 14, 2025), *available at* https://www.youtube.com/shorts/eN-vqtYU1C0.

*Plaintiff's First Amended Complaint*

A ROUND IN THE CHAMBER, AND TO LOAD A ROUND IN THE CHAMBER ONLY WHEN READY TO FIRE."[12] Despite claiming to be the chosen firearm for military and law enforcement agencies, SIG did not bother to issue any press release or public statement for how it now advises carrying the P320 *without a round in the chamber.*

12.    CTC has also touted itself as Houston's premiere gun store, striving to serve the needs of "law enforcement, military veterans, and first responders." CTC further promised to provide "the very best equipment at the best possible price." CTC exclusively sold SIG Sauer handguns, and therefore, it had specialized knowledge pertaining to SIG weapons. This would necessarily include specialized knowledge pertaining to the defects associated with the P320 pistol and the widely reported instances of it spontaneously discharging. Despite these assurances and despite its specialized knowledge, CTC sold Officer Fernandez the defective P320 pistol that caused his severe injuries when it should have warned unsuspecting law enforcement officers and individuals like him of the known and widely reported problems with this gun.

13.    What ends today is SIG and its sellers' deflection of responsibility for

---

[12] SIG P320 Pistols Operator's Manual: Handling & Safety Instructions, Section 2.0.1 (Safety Mechanisms), at 5, *available at* https://www.sigsauer.com/media/sigsauer/resources/OPERATOR_S_MANUAL_P320_8501909-01_REV15_WEB_FILE_1.pdf.

*Plaintiff's First Amended Complaint*

continuing to put a product on the market that they know is defective and is endangering lives. This lawsuit seeks to compensate Officer Fernandez for the injuries he sustained as a result of SIG and its seller's failures and to impose the accountability that SIG refuses to take itself.

## III.
## PARTIES

14. Plaintiff Richard Fernandez, Jr. is a resident of the State of Texas.

15. Defendant, Sig Sauer, Inc. ("SIG"), is a Delaware corporation with its principal place of business at 72 Pease Boulevard, Portsmouth, New Hampshire 03801-6801. SIG is a leading global designer and manufacturer of firearms for military, law enforcement, and commercial markets. SIG has made an appearance in this proceeding and may be served through its attorneys of record.

16. Defendant, CTC Gunworks LLC ("CTC"), is a domestic limited liability company conducting business within the State of Texas. The sole member of CTC is a citizen of the State of Texas. CTC may be served with process by serving its registered agent, Joshua Carl Crescenzi, at 3200 North Freeway, Houston, Texas 77009, or wherever he may be found.

17. Prior to removal, Plaintiff's process servers made seven attempts to serve CTC through its registered agent. These attempts were made from July 24, 2025 through July 28, 2025 at two different addresses: 3200 North Freeway, Houston, Texas 77009 and a residence located at 738 W. 43rd Street, Houston, Texas

*Plaintiff's First Amended Complaint*

77018.  Because it became clear that CTC's registered agent was dodging service, on July 29, 2025, Plaintiff filed a Motion for Substituted Service of Process on CTC in Cause No. 2025-51395 in the 61st Judicial District Court of Harris County (the "State Court Proceeding"). The State Court signed an Order Granting Motion for Substituted Service of Process on July 30, 2025.

18.    The Order Granting Substituted Service authorized service on CTC by doing the following:

> [F]irmly affixing a true copy of the citation, with a copy of the Petition and [the] Order authorizing substitute service attached, to the front door or security gate of the . . . business at the above address (3200 North Freeway, Houston, TX 77009).

The Order further provided that service would not be deemed perfected unless the following provisions were also carried out by the same process server on the same day that delivery was made by firmly affixing the citation, Petition, and Order to the front door or security gate at that address:

> (a) A copy of the citation, Petition, and this Order shall be mailed by BOTH certified mail, return-receipt requested, AND by regular, first-class mail to the defendant at the same address at which service is authorized above;
>
> (b) The return of service shall not be made until thirty (30) days after mailing or until the process server receives back the green card from the post office, whichever date is earlier;
>
> (c) The return of service shall include a statement setting out the date of mailing and the result of the mailing by certified mail, and the date of mailing and result of same by regular, first-

*Plaintiff's First Amended Complaint*

class mail (*i.e.*, whether the envelope was returned by the post office, the green card came back signed, etc.); and,

(d) A copy of any envelope or green card returned by the post office shall be attached to the return of service.

19.    In compliance with the Order, on August 1, 2025, Plaintiff's process servers firmly affixed a copy of the citation, Petition, and Order to the front entry of the business located at 3200 North Freeway, Houston, TX 77009. On the same day, the same process server also mailed copies of these documents by certified mail, return receipt requested and regular mail.  On August 29, 2025, the certified mail, return receipt was returned to the process server's office as unclaimed.

20.    On September 3, 2025, the process server filed the return of service on CTC in the State Court Proceeding, along with a Declaration of Service Per Order Authorizing Substitute Service attesting to the facts set forth above.

21.    Accordingly, Plaintiff has been diligently seeking to serve CTC both before and after removal to this Court. To ensure compliance with Federal Rule of Civil Procedure 4(m), citation for service of process on CTC is again requested at this time.

## IV.
## JURISDICTION AND VENUE

22.    This Court lacks subject matter jurisdiction on the basis of the absence of complete diversity or federal question jurisdiction as required by 28 U.S.C. §§ 1331, 1332. As set forth below, Plaintiff has expressly disclaimed any potentially

*Plaintiff's First Amended Complaint*

applicable federal claim and the sole member of CTC is Texas citizen. Plaintiff, a Texas citizen, intends to file a motion to remand this proceeding to the State Court Proceeding.

23.    Subject to and without waiving any claim that this Court lacks subject matter jurisdiction, venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1441(a).

V.
**FACTS**

*A.     History of the SIG P320's Defects.*

24.    SIG's P320 pistol was first introduced in 2014 and received rave reviews from gun enthusiasts.  For instance, in January 2017 it won the Modular Handgun System (MMS) competition and earned a $580 million contract to supply service pistols to all branches of the U.S. military. But beginning in or around 2017, reports of the P320's unintentional discharges—whether from "drop fires" or from instances where, like here, the trigger was never pulled at all—began to surface. These early reports concluded that the pistol was defective because of the design of its trigger and sear.

25.    The Army demanded a change in the design, and SIG obliged. SIG did not, however, implement a mandatory recall of its P320. Instead, on August 8, 2017,

*Plaintiff's First Amended Complaint*

it implemented the "P320 Voluntary Upgrade Program," which was primarily implemented to ensure the pistol was "drop safe."[13]

26.    As set forth on its website, the "no cost" Voluntary Upgrade Program "include[d] an alternate design that reduces the physical weight of the trigger, sear, and striker while additionally adding a mechanical disconnector."  On the Upgrade Program's Frequently Asked Questions page,[14] SIG answers the question of whether the P320 was safe in its current configuration:

> Yes. The P320 meets and exceeds all US safety standards. However, mechanical safeties are designed to augment, not replace safe handling practices. Careless and improper handling of any firearm can result in an unintentional discharge.

The FAQs explain that the reason for the upgrade is because "a potential discharge of the firearm may result when dropped[,]" although "it is a rare occurrence" and occurs "usually after multiple drops, at certain angles and conditions[.]" SIG further confirms that an external manual safety will not be installed as part of the upgrade. These design "upgrades" were automatically added to the P320s manufactured after the initiation of the Voluntary Upgrade Program in 2018, but SIG has never *required* the return of any defective P320 firearm.

---

[13] https://www.sigsauer.com/p320-voluntary-upgrade-program.

[14] https://www.sigsauer.com/p320-voluntary-upgrade-program#faqs.

*Plaintiff's First Amended Complaint*

27.     However, even after implementing these design changes, the unintentional discharges of even the "upgraded" P320s kept occurring — even, as here, when the pistol is fully holstered, not dropped, or being handled at all.  On information and belief, the pertinent defects which SIG has failed to remedy include its extremely light trigger pull and the P320's lack of any external safeties, components which are commonly found in other duty pistols.  Other design defects, on information and belief, include but are not limited to:

> i.  SIG's design lacks a trigger safety capable of preventing unintentional discharges;
>
> ii.  SIG's design lacks adequate internal safety mechanisms capable of preventing unintentional discharges;
>
> iii.  SIG's design lacks adequate redundant safeties or similar devices capable of preventing unintentional discharges;
>
> iv.  SIG's design fails to prevent the movement of any internal components that would engage the P320's firing mechanism unless the trigger is first pulled; and,
>
> v.  SIG's design fails to use component parts of proper size, dimension, and weight so as to prevent unintentional discharges.

28.     Now, hundreds of cases nationwide have illustrated the dangerously defective nature of the P320 because it spontaneously discharges when it is being

*Plaintiff's First Amended Complaint*

used as intended,[15] including during normal carrying, holstering, un-holstering, or handling, or as in this case, when it is not being handled at all.

## B.    A Defectively Designed P320 Shot Officer Fernandez on January 20, 2025.

29.    Plaintiff Richard Fernandez, Jr. is a 34-year veteran with the Houston Police Department. He joined HPD in 1990 and was a Senior Police Officer who worked on a Crime Suppression Team in the Kingwood Division. Officer Fernandez is also a competitive rower and enjoys exercising and working out. As a former college athlete, he takes great pride in maintaining his physical fitness, for both his health and his job as a Senior Police Officer with HPD.

30.    Officer Fernandez purchased his SIG P320 pistol (the "Subject Handgun") in or around December of 2022 from CTC in Houston, Texas. When Officer Fernandez went to CTC's store to purchase a new duty weapon, he noticed that the only type of handguns that were displayed were SIG brand weapons. CTC's website, which Officer Fernandez reviewed prior to going to the store, also primarily advertised SIG weapons.

31.    Officer Fernandez spoke to a CTC salesperson and practiced shooting the Subject Handgun at CTC's gun range several times before he purchased it. Before Officer Fernandez purchased the Subject Handgun, the CTC salesperson

---

[15] *See e.g.* the facts set forth in ¶¶ 7– 8 which are expressly incorporated by reference.

*Plaintiff's First Amended Complaint*

mentioned that SIG representatives had a recent meeting with CTC representatives about the possibility of opening a SIG academy in Houston, Texas. When Officer Fernandez purchased the Subject Handgun, the CTC salesperson gave him a SIG sticker.

32.     Thus, as an authorized dealer of SIG products and a premiere gun store for law enforcement, CTC had specialized knowledge regarding SIG weapons, including the P320 and its known defects.

33.     On January 20, 2025, Officer Fernandez was on patrol for a "SLAB" car event taking place in advance of the Martin Luther King Jr. Day parade. At around 11:30 a.m., Officer Fernandez parked his patrol car in a middle lane on Airport Boulevard near the intersection of Martin Luther King Boulevard in an effort to divert vehicle traffic away from the MLK Day events.

34.     After Officer Fernandez parked and exited his vehicle, he walked to the passenger side door of another officer's patrol vehicle which was also blocking lanes to divert the flow of traffic. While Officer Fernandez exited the vehicle and walked the short distance to his partner's patrol vehicle, the Subject Handgun remained holstered. Officer Fernandez did not touch the Subject Handgun at all.

35.     Within a minute of approaching the other officer's vehicle, Officer Fernandez was just about to start directing oncoming cars when he heard a muffled "pop" sound.  Confused, he then started to feel warmth in his right leg. He looked

*Plaintiff's First Amended Complaint*

down, and shocked, noticed a hole in his pant leg. Blood started pouring from his right leg and ankle.

36.     After other officers wrapped Officer Fernandez's leg with three tourniquets, he was rushed to the hospital via ambulance.

37.     The bullet from the Subject Handgun shot through Officer Fernandez's right calf and lodged into his ankle. But the Subject Handgun, at all times, remained holstered. He never pulled the trigger or otherwise handled the gun.

38.     The severity of Officer Fernandez's injury required emergency surgery to remove the bullet.   Officer Fernandez spent three days in the hospital, and he will require ongoing medical care for ongoing treatment likely in the form of physical therapy. As a very experienced police officer, the unintentional discharge of Officer Fernandez's Subject Handgun has also caused him shame, embarrassment, and anxiety knowing that others may believe that he caused it to discharge.

## VII.
## CAUSES OF ACTION

39.     Officer Fernandez incorporates all of the allegations set out in paragraphs 1 through 38 above into each cause of action set forth below.

*Plaintiff's First Amended Complaint*

**A.**
**Strict Liability – Design Defect**
**(Against SIG as Manufacturer)**

40.     SIG is engaged in the business of designing, manufacturing, marketing, advertising, selling, and distributing firearms, including the Subject Handgun.

41.     SIG placed the Subject Handgun on the market through local distributors, along with millions of other P320 pistols.

42.     SIG's P320 pistols, including the Subject Handgun, are defective and unreasonably dangerous because they function in a manner not reasonably expected by an ordinary consumer of firearms, namely, by discharging without any handling whatsoever or anyone pulling the trigger.

43.     The Subject Handgun is defective because SIG designed the Subject Handgun in such a manner that allows the firearm to unintentionally discharge. Specifically, on information and belief, the Subject Handgun is defective in one or more of the following ways:

> i.   SIG's design lacks an external safety capable of preventing unintentional discharges;
>
> ii.  SIG's design lacks a trigger safety capable of preventing unintentional discharges;
>
> iii. SIG's design lacks adequate internal safety mechanisms capable of preventing unintentional discharges;
>
> iv.  SIG's design lacks adequate redundant safeties or similar devices capable of preventing

Page 19 of 34

*Plaintiff's First Amended Complaint*

unintentional discharges;

    v. SIG's design fails to prevent the movement of any internal components that would engage the P320's firing mechanism unless the trigger is first pulled; and,

    vi. SIG's design fails to use component parts of proper size, dimension, and weight so as to prevent unintentional discharges.

44. These design defects were a producing cause of Officer Fernandez's injuries and his damages.

**B.**
**Strict Liability – Manufacturing Defect**
**(Against SIG as Manufacturer)**

45. SIG manufactures P320 pistols, including the Subject Handgun.

46. On information and belief, the Subject Handgun contained manufacturing defects at the time if left the possession of SIG, *i.e.*, the Subject Handgun deviated in its construction or quality from its specifications or planned output in a manner that rendered it unreasonably dangerous. The Subject Handgun was dangerous to an extent beyond that which would be contemplated by the ordinary user of the firearm with the ordinary knowledge common to the community as to the Subject Handgun's characteristics, namely because the Subject Handgun discharged without any handling whatsoever or anyone pulling the trigger.

*Plaintiff's First Amended Complaint*

47.    The Subject Handgun reached Officer Fernandez without substantial change in its condition.

48.    The Subject Handgun's manufacturing defects were a producing cause of Officer Fernandez's injuries and his damages.

### C.
### Strict Liability – Marketing Defect
### (Against SIG as Manufacturer)

49.    There is a risk of harm inherent in SIG's P320 pistols, including the Subject Handgun, that arises from its intended or reasonably anticipated use— namely, that it will discharge without any handling whatsoever or anyone pulling the trigger.

50.    SIG knew, or in the exercise of ordinary care should have known, of the Subject Handgun's propensity to unintentionally discharge without any handling whatsoever or anyone pulling the trigger, yet it failed to notify or warn Officer Fernandez of the propensity, either before or after his purchase of the Subject Handgun.

51.    SIG failed, and continues to fail, to warn Officer Fernandez and the general public of the risks associated with the use and carrying of the P320 pistol, including the Subject Handgun.

*Plaintiff's First Amended Complaint*

52.     SIG's failure to warn and/or inform Officer Fernandez of the risk of unintentional discharges with the P320 pistol, including the Subject Handgun, were a proximate cause of Officer Fernandez's injuries and his damages.

**D.**
**Strict Liability – Design, Manufacturing, and Marketing Defect**
**(Against CTC as Seller)**

53.     CTC is engaged in the business of distributing or otherwise placing, for commercial purposes, firearms in the stream of commerce for use or consumption, including the SIG P320 pistols and the Subject Handgun.

54.     As explained above, the Subject Handgun is defective and unreasonably dangerous because it functions in a manner not reasonably expected by an ordinary consumer of firearms, namely, by discharging without any handling whatsoever or anyone pulling the trigger.

55.     As explained above, on information and belief, the Subject Handgun is defective in one or more of the following ways:

    i.  SIG's design lacks an external safety capable of preventing unintentional discharges;

    ii.  SIG's design lacks a trigger safety capable of preventing unintentional discharges;

    iii.  SIG's design lacks adequate internal safety mechanisms capable of preventing unintentional discharges;

    iv.  SIG's design lacks adequate redundant safeties or similar devices capable of preventing

*Plaintiff's First Amended Complaint*

unintentional discharges;

    v.   SIG's design fails to prevent the movement of any internal components that would engage the P320's firing mechanism unless the trigger is first pulled; and,

    vi.   SIG's design fails to use component parts of proper size, dimension, and weight so as to prevent unintentional discharges.

56.    As explained above, on information and belief, the Subject Handgun contained manufacturing defects at the time if left the possession of SIG, *i.e.*, the Subject Handgun deviated in its construction or quality from its specifications or planned output in a manner that rendered it unreasonably dangerous. The Subject Handgun was dangerous to an extent beyond that which would be contemplated by the ordinary user of the firearm with the ordinary knowledge common to the community as to the Subject Handgun's characteristics, namely because the Subject Handgun discharged without any handling whatsoever or anyone pulling the trigger.

57.    As explained above, there is a risk of harm inherent in the Subject Handgun, that arises from its intended or reasonably anticipated use—namely, that it will discharge without any handling whatsoever or anyone pulling the trigger.

58.    Moreover, in light of the numerous lawsuits, the widely reported instances of the P320 firing on its own, and the law enforcement agency bans,[16] as

---

[16] *See supra* ¶¶ 6–8.

*Plaintiff's First Amended Complaint*

Houston's premiere gun store with expertise in selling SIG firearms particularly to law enforcement, CTC knew of the material defects associated with SIG's P320 pistols, including the Subject Handgun, at the time it sold the Subject Handgun to Officer Fernandez in December of 2022. CTC knew of the Subject Handgun's propensity to unintentionally discharge without any handling whatsoever or anyone pulling the trigger. In the alternative, in the exercise of ordinary care, CTC should have known of the Subject Handgun's propensity to unintentionally discharge without any handling whatsoever or anyone pulling the trigger. Yet, despite its specialized knowledge and expertise, CTC failed to notify or warn Officer Fernandez of the Subject Handgun's defects either before or after he purchased it.

59.    CTC failed to warn Officer Fernandez and the general public of the risks associated with the use and carrying of the Subject Handgun.

60.    CTC's failure to warn and/or inform Officer Fernandez of the risk of unintentional discharges with the P320 pistol, including the Subject Handgun, were a proximate cause of Officer Fernandez's injuries and his damages.

**E.**
**<u>Negligence and Gross Negligence</u>**
**(Against SIG and CTC)**

61.    Defendants knew—or in the exercise of ordinary care, should have known—that the Subject Handgun would be used and carried in the manner it was on the day and at the time when it spontaneously discharged, while holstered, and

Page 24 of 34

*Plaintiff's First Amended Complaint*

severely injured Officer Fernandez.

62.    Accordingly, it was foreseeable that ordinary users of the Subject Handgun, including law enforcement officers like Officer Fernandez, would be harmed by it, because of one or more of the unreasonably dangerous conditions present within the Subject Handgun, as outlined herein. It was also foreseeable that bystanders near the Subject Handgun would be catastrophically injured or killed by any unintentional discharge of it, including during use, handling, movement, assembly, disassembly, loading, or unloading, or as here, when it is holstered and carried. Such discharge was foreseeable to Defendants, as SIG had designed and manufactured the Subject Handgun in such a way as to permit such unintentional discharges.

63.    SIG knowingly embarked on a marketing campaign which misled the general public, as well as millions of end users including Officer Fernandez, and it continues to do so. SIG misrepresented information to law enforcement agencies across the United States, misstating or omitting critical facts known to SIG. CTC further promoted SIG's misleading marketing campaign by failing to adequately warn the public of the risks associated with the P320, including the Subject Handgun. Ultimately, Defendants' misleading marketing campaign discouraged end users, like Officer Fernandez, from searching out and/or selecting safer alternatives to the P320 pistol.

*Plaintiff's First Amended Complaint*

64.     Defendants had a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings and instructions for, package, distribute, and sell the Subject Handgun in a reasonably safe condition so as not to present a danger to end users—including Officer Fernandez—and bystanders for whom it was reasonably foreseeable would come into contact with the Subject Handgun under ordinary circumstances.

65.     SIG breached its duties to Officer Fernandez in one or more of the following ways:

    a. Designing the Subject Handgun in such an unreasonably dangerous and defective manner as to permit the Subject Handgun to unintentionally discharge, including, on information and belief, through:

        i. A design that lacks an external safety capable of preventing unintentional discharges;

        ii. A design that lacks a trigger safety capable of preventing unintentional discharges;

        iii. A design that lacks adequate internal safety mechanisms capable of preventing unintentional discharges;

        iv. A design that lacks adequate redundant safeties or similar devices capable of preventing unintentional discharges;

        v. A design that fails to prevent the movement of any internal components that would engage the P320's firing mechanism unless the trigger is

*Plaintiff's First Amended Complaint*

first pulled; and,

    vi. A design that fails to use component parts of proper size, dimension, and weight so as to prevent unintentional discharges.

b. Permitting the Subject Handgun to be manufactured without one or more of the foregoing conditions rectified;

c. Failing to recall the Subject Handgun as defectively designed or, alternatively, to warn of the same;

d. Manufacturing the Subject Handgun in such an unreasonably dangerous and defective manner as to permit the Subject Handgun to unintentionally discharge;

e. Failing to design and manufacture the Subject Handgun in such a way as to restrict, limit, or prevent the possibility of unintentional discharges of the Subject Handgun, even in the event of inadequate or non-existent maintenance; and,

f. Improperly assembling, inspecting, and testing the Subject Handgun, including prototypes in the design stage, such that foreseeable use could permit unintentional discharges of the Subject Handgun without remedying or warning of the risk of unintentional discharges.

66. Defendants breached their duties to Officer Fernandez in one or more of the following ways:

a. Selling the Subject Handgun in such an unreasonably dangerous and defective manner as to permit the Subject Handgun to unintentionally discharge, including, on information and belief, through:

*Plaintiff's First Amended Complaint*

i. Selling the Subject Handgun without an external safety capable of preventing the unintentional discharge of the Subject Handgun;

ii. Selling the Subject Handgun without a trigger safety capable of preventing the unintentional discharge of the Subject Handgun;

iii. Selling the Subject Handgun with inadequate internal safety mechanisms capable of preventing the unintentional discharge of the Subject Handgun;

iv. Selling the Subject Handgun with inadequate redundant safeties or similar devices capable of preventing unintentional discharge of the Subject Handgun;

v. Selling the Subject Handgun without internal components that prevent the movement of any firing mechanism internal component part unless the trigger is first pulled; and,

vi. Selling the Subject Handgun with component parts of improper size, dimension, and weight so as to prevent unintentional discharges.

b. Making the Subject Handgun available to the general public, without adequate warning of the unreasonably dangerous and defective nature of the Subject Handgun; and,

c. Marketing, promoting, advertising, and representing to the general public that the Subject Handgun was reasonably safe for use, carrying, handling, movement, assembly, disassembly, loading, and unloading when, in reality, basic and reasonably foreseeable use caused the Subject Handgun to unintentionally discharge;

*Plaintiff's First Amended Complaint*

67.     Defendants' above-referenced breaches directly and proximately caused the injuries suffered by Officer Fernandez.

68.     As a direct and proximate result of Defendants' negligence, Officer Fernandez was injured and suffered, *inter alia*: permanent injury, disability, disfigurement, scarring, pain and suffering, aggravation of preexisting conditions, loss of past wages, loss of future earning capacity, mental anguish, loss of enjoyment of life, and medical expenses in the care of treatment of said injuries. All injuries are permanent within a reasonable degree of medical probability and will require future medical treatment.  Officer Fernandez will continue to suffer damages in the future.

69.     Defendants' above-referenced breaches involved an extreme degree of risk, considering the probability and magnitude of potential harm to others of being shot by a firearm, including not only to end users, such as Officer Fernandez, but also to bystanders near the firearm. For instance, with regards to probability, there are approximately two million P320s in circulation since the pistol hit the market in 2014. Since then, there have been *at least* 200 instances of the P320 spontaneously discharging without a trigger pull.[17] That is approximately a 1 in 10,000 chance that this firearm will spontaneously discharge and hit a human

---

[17] This is based on the number of known lawsuits and publicly available reports and investigations.

*Plaintiff's First Amended Complaint*

being within the proximity of the weapon. Measuring this against the magnitude of harm caused by a gunshot wound—*i.e.*, the potential to cause serious injury or the loss of life to any adult or child near this gun—Defendants' above-referenced breaches and omissions involve an extreme degree of risk to others. As set forth above, in light of the litigation, press attention, and law enforcement agency policies surrounding the P320's defects, Defendants have actual awareness of this risk but have proceeded with manufacturing, selling, and placing fatally defective firearms into the stream of commerce with conscious indifference to the rights, safety, and welfare of others.

## VIII.
## ACTUAL & EXEMPLARY DAMAGES

70.    Officer Fernandez incorporates by reference the preceding factual allegations.

71.    Defendants are liable to Officer Fernandez for actual and exemplary damages.  Officer Fernandez's actual damages include:

(a)    past pain and mental anguish;

(b)    future pain and mental anguish;

(c)    past medical expenses;

(d)    future medical expenses; and,

(e)    past lost earnings and future lost earnings capacity.

*Plaintiff's First Amended Complaint*

72.     Pursuant to Texas Civil Practice and Remedies Code Section 41.003, Officer Fernandez is entitled to an award of exemplary damages against Defendants because they were grossly negligent. Defendants' acts or omissions, when viewed objectively from Defendants' standpoint at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.  *See supra* ¶ 69 specifically incorporated by reference.

## IX.
## <u>CONDITIONS PRECEDENT</u>

73.     All conditions precedent to Officer Fernandez's claims for relief have been performed or have occurred.

## X.
## <u>JURY DEMAND</u>

74.     Officer Fernandez hereby requests a jury trial on all issues and tenders the appropriate fee.

## XI.
## <u>DISCLAIMER OF FEDERAL CLAIMS</u>

75.     Officer Fernandez does not seek in this lawsuit to recover any damages to which he may be entitled under any federal law. Nothing in this Amended

*Plaintiff's First Amended Complaint*

Complaint is intended to or should be construed to assert any claims involving any federal question.

## XII.
## PRAYER

Officer Fernandez requests that upon final trial, he recover a judgment against Defendants for actual and exemplary damages, pre-judgment and post-judgment interest, costs of court, and all other relief to which Officer Fernandez is entitled at law or in equity.

Respectfully submitted,

**RUSTY HARDIN & ASSOCIATES, LLP**

 /s/ Rusty Hardin
Rusty Hardin
Attorney-in-Charge
State Bar No. 08972800
Federal ID 19424
Houston, Texas  77010
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800
rhardin@rustyhardin.com

*Attorney for Plaintiff*
*Richard Fernandez, Jr.*

*Plaintiff's First Amended Complaint*

**OF COUNSEL:**

Joe Roden
State Bar No. 00794549
Federal ID 20354
Kendall Valenti Speer
State Bar No. 24077954
Federal ID 2783343
1401 McKinney Street, Suite 2250
Houston, Texas  77010
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800
jroden@rustyhardin.com
kspeer@rustyhardin.com


        -and-


**LAW OFFICE OF J. SCOTT SISCOE**

J. Scott Siscoe
State Bar No. 00788426
Federal ID 28219
2215 County Road 391
Pearland, Texas 77581
Telephone: (281) 640-8000
Facsimile: (281) 727-0459
siscoelaw@sbcglobal.net

***Attorneys for Plaintiff***
***Richard Fernandez, Jr.***

*Plaintiff's First Amended Complaint*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

*/s/ Kendall Valenti Speer*
Kendall Valenti Speer

*Plaintiff's First Amended Complaint*