IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD FERNANDEZ, JR. | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO.: 4:25-cv-04007 |
| v. | § | |
| | § | |
| SIG SAUER, INC., and | § | |
| CTC GUNWORKS LLC | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT SIG SAUER, INC.'S MOTION TO STRIKE AND FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### SUMMARY OF ARGUMENT

This case arises from Plaintiff Richard Fernandez, Jr.'s accidental discharge of a loaded Sig Sauer P320 striker-fired pistol, which resulted in injuries to Mr. Fernandez's right leg. Plaintiff filed his Original Petition in the 61st District Court of Harris County, Texas. Sig Sauer, Inc. ("Sig Sauer") removed the matter to this Court because defendant retailer CTC Gunworks LLC was improperly joined; its citizenship must be disregarded. *See* Def. Sig Sauer, Inc.'s Notice of Removal, Dkt. No. 1. Sig Sauer then moved for partial dismissal of the Original Petition and to strike allegations irrelevant to Plaintiff's personal injury claims. *See* Sig Sauer's Mot. to Strike and for Partial Dismissal of Plaintiff's Original Petition. Dkt. No. 4

i

("Motion"). In response, Plaintiff filed his First Amended Complaint ("FAC"). The FAC fails to cure the deficiencies identified in the original Motion, which Sig Sauer renews here.

As in the original Motion, Sig Sauer moves pursuant to Fed. R. Civ. P. 12(f) to strike portions of the FAC that allege design defect theories (concerning drop fires or trigger actuation) that are unrelated to Plaintiff's accident (allegedly involving the discharge of a holstered pistol that was not being handled). The FAC does not – because it cannot – add any factual allegations that would connect these extraneous design defect theories to this case. Sig Sauer also renews its motion pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of Plaintiff's design defect claims to the extent they are based on the absence of external safeties (which Sig Sauer in fact offered as optional safety equipment that the plaintiff declined), and for dismissal of his claims for manufacturing defect (no such defect is identified), failure to warn (not required for open and obvious dangers), and gross negligence and exemplary damages (based solely on conclusory allegations). These claims are contrary to Texas handgun product liability law and are not supported by factual allegations in the FAC.

Sig Sauer requests that this motion be granted with prejudice because Plaintiff has not cured the deficiencies identified in the original Motion. *See, e.g., Jacobs v. Abbott Labs., Inc.*, No. 3:23-cv-132, 2024 U.S. Dist. LEXIS 235503, at *15 (S.D. Tex. Mar. 19, 2024) (dismissing certain claims with prejudice because plaintiffs'

first amended complaint failed to plead sufficient facts in response to first motion to dismiss); *Pi Data Ctrs. Priv. Ltd. v. Hpe Enters. Co.*, No. H-22-3947, 2024 U.S. Dist. LEXIS 41879 (S.D. Tex. Mar. 11, 2024).

# **TABLE OF CONTENTS**

Summary of Argument ........................................................ i

Table of Contents ............................................................ iv

Table of Authorities ..........................................................v

Introduction ...................................................................1

Factual Background .........................................................1

Legal Standard ...............................................................4

Argument......................................................................6

   I.    Plaintiff's Allegations Pertaining to External Safeties, Drop
       Fires and Inadvertent Trigger Pulls Should Be Stricken As
       Immaterial Because They Have No Bearing on the Facts or
       Law of This Case.......................................................6

   II.   Plaintiff's Negligence and Strict Liability Allegations
       Premised on the Lack of an External Safety Fail Because
       Texas Law Does Not Permit Such Claims When a Purchaser
       Elects to Buy a Version of a Product Without an Optional
       Safety Device Offered by the Manufacturer. .............................8

   III.  Plaintiff Fails to Allege Facts Sufficient to State a Claim for
       Manufacturing Defect.................................................11

   IV.  Plaintiff Fails to Allege Facts Sufficient to State a Claim for
       Failure to Warn.......................................................13

   V.   Plaintiff's Claim for Exemplary Damages and Allegations of
       Gross Negligence Are Unsupported By the Requisite Facts
       and Should Be Dismissed. .............................................17

Conclusion ...................................................................19

Certificate of Service ........................................................21

# TABLE OF AUTHORITIES

## Cases

*Albaugh v. Wind Access Eng'g, Inc.*,
   No. 1:23-cv-00146, 2025 WL 1699195 (S.D. Tex. May 16, 2025) ...... 12, 18, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 4, 8

*Banzhaf v. ADT Sec. Sys. Sw., Inc.*,
   28 S.W.3d 180 (Tex. App.—Eastland 2000) ................................................. 9, 10

*Baytown Christian Fellowship Church v. Underwriters at
   Lloyd's, Lond.*,
   No. H-10-5173, 2012 WL 3129094 (S.D. Tex. July 31, 2012) .......................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 4

*Boyd's Bit Serv., Inc. v. Specialty Rental Tool & Supply, Inc.*,
   332 F. Supp. 2d 938 (W.D. La. 2004) ..................................................... 7

*Casey v. Toyota Motor Eng'g & Mfg. N. Am. Inc.*,
   770 F.3d 322 (5th Cir. 2014) ............................................................... 12

*Cofresi v. Medtronic, Inc.*,
   450 F. Supp. 3d 759 (W.D. Tex. 2020) .............................................. 19

*Coleman v. Cintas Sales Corp.*,
   40 S.W.3d 544 (Tex. App.—San Antonio 2001) ............................... 15

*Connell Trucking Co. v. Estes Express Lines*,
   2022 WL 21712355 (W.D. Tex. Nov. 30, 2022) ................................. 7

*Cooper Tire & Rubber Co. v. Mendez*,
   204 S.W.3d 797 (Tex. 2006) ............................................................ 11

*Diggles v. Horwitz*,
   765 S.W.2d 839 (Tex. App.—Beaumont 1989) .................................. 14

*Doe v. Roman Cath. Diocese of Galveston-Hou.*,
   No. H-05-1047, 2006 WL 2413721 (S.D. Tex. Aug. 18, 2006) .......................... 8

*Elsdon v. U.S. Physical Therapy, Inc.*,
  No. 4:18-CV-01766, 2021 WL 8945136 (S.D. Tex. Nov. 30, 2021)..................5

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*,
  510 U.S. 517 (1994)...............................................................................8

*Fearrington v. Boston Scientific Corp.*,
  410 F. Supp. 3d 794 (S.D. Tex. 2019), *report and recommendation
  adopted*, No. 1:21-CV-437-RP, 2023 WL 2921339 (W.D. Tex.
  Apr. 12, 2023).......................................................................................11

*Foltz v. Smith & Wesson Corp.*,
  No. 3:08–CV–0858–K, 2009 WL 2596598 (N.D. Tex.
  Aug. 20, 2009) ......................................................................................13

*Gilchrist v. Schlumberger Tech. Corp.*,
  321 F.R.D. 300 (W.D. Tex. 2017) .........................................................5

*Herbst v. Deere & Company*,
  No. 3:21-CV-44, 2021 WL 5567379 (S.D. Tex. Nov. 29, 2021).....................19

*Idar v. Cooper Tire & Rubber Co.*,
  No. C-10-217, 2010 WL 3702579 (S.D. Tex. Sep. 15, 2010)............................7

*In re Beef Indus. Antitrust Litig.*,
  600 F.2d 1148 (5th Cir. 1979) ................................................................5

*In re Toyota Motor Corp.*,
  790 F. Supp. 2d 1152 (C.D. Cal. 2011) ..................................................2

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
  920 F.3d 890 (5th Cir. 2019) ..............................................................1, 9

*Jacobs v. Abbott Labs., Inc.*,
  No. 3:23-cv-132, 2024 U.S. Dist. LEXIS 235503 (S.D. Tex.
  Mar. 19, 2024)...................................................................................... ii

*Johnson v. Ford Motor Co.*,
  988 F.2d 573 (5th Cir. 1993) ...............................................................19

*Keene v. Sturm, Ruger and Co.*,
  121 F. Supp. 2d 1063 (E.D. Tex. 2000)........................................ 13, 14

vi

*La. Crawfish Producers Ass'n-W. v. Mallard Basin, Inc.*,
  No. 6:10-cv-01085-RFD-PJH, 2014 WL 782984 (W.D. La.
  Feb. 24, 2014) ...................................................................................5

*Lee Lewis Constr., Inc. v. Harrison*,
  70 S.W.3d 778 (Tex. 2001)...............................................................17

*Miller v. Bridgestone Ams. Tire Operations*, *LLC*,
  No. 1:21-CV-437-RP, 2023 WL 2138182 (W.D. Tex.
  Feb. 21, 2023) ........................................................................... 11, 12

*Nissan Motor Co. v. Armstrong*,
  145 S.W.3d 131 (Tex. 2004) .............................................................19

*Pan Am. Life Ins. v. Blanco*,
  311 F.2d 424 (5th Cir. 1962) ..............................................................7

*Patterson v. Rohm Gesellschaft*,
  608 F. Supp. 1206 (N.D. Tex. 1985) .................................................13

*Perkins v. F.I.E. Corp.*,
  762 F.2d 1250 (5th Cir. 1985) ..........................................................13

*Pi Data Ctrs. Priv. Ltd. v. Hpe Enters. Co.*,
  No. H-22-3947, 2024 U.S. Dist. LEXIS 41879 (S.D. Tex.
  Mar. 11, 2024)................................................................................. iii

*Rios v. City of Conroe*,
  674 F. App'x 366 (5th Cir. 2016) .......................................................7

*Roberts v. Zev Techs., Inc.*,
  No. 1:15-CV-309 RP, 2015 WL 7454688 (W.D. Tex.
  Nov. 23, 2015) ..................................................................................14

*Robins v. Kroger Co.*,
  982 S.W.2d 156 (Tex. App.—Houston 1998)....................................15

*Rolen v. Burroughs Wellcome Co.*,
  856 S.W.2d 607 (Tex. App.—Waco 1993) ........................................15

*Sadler v. Benson Motors Corp.*,
  No. 97-1083, 1997 WL 266735 (E.D. La. May 15, 1997) ...................5

*Seifried v. Hygenic Corp.*,
   410 S.W.3d 427 (Tex. App.—Houston 2013) ....................................................15

*Stanfield v. Boston Scientific Corp.*,
   166 F. Supp. 3d 873 (S.D. Tex. 2015) ....................................................... 1, 4, 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)..............................................................................................2

*THI of Tex. at Lubbock I, LLC v. Perea*,
   329 S.W.3d 548 (Tex. App.—Amarillo 2010) ....................................................17

*U.L. Coleman Co. v. Bossier City-Par. Metro. Plan. Comm'n*,
   No. 08–2011, 2015 WL 6506173 (W.D. La. Oct. 27, 2015)................................8

*U-Haul Int'l, Inc. v. Waldrip*,
   380 S.W.3d 118 (Tex. 2012) ..............................................................................19

*Williams v. Gen. Binding Corp.*,
   No. 3:23-CV-00850-K, 2024 WL 628850 (N.D. Tex.
   Feb. 14, 2024) ..................................................................................... 12, 13, 17

*Zytax, Inc. v. Green Plains Renewable Energy, Inc.*,
   No. H-09-2582, 2010 WL 2219179 (S.D. Tex. May 28, 2010) ...........................5

## Statutes

Tex. Civ. Prac. & Rem. Code Ann. § 41.003 .........................................................17

## Rules

Fed. R. Civ. P. 12 ..................................................... ii, 1, 2, 4, 5, 7, 8, 19, 20

Fed. R. Civ. P. 8 ......................................................................................................4

## Other Authorities

Wright & Miller's Federal Practice & Procedure § 1382 (3d ed.) ...........................5

**INTRODUCTION**

Sig Sauer, Inc. ("Sig Sauer") hereby moves pursuant to Fed. R. Civ. P. 12(f) for the Court to strike various portions of Plaintiff's First Amended Complaint ("FAC") that allege design defect theories that are unrelated to the Plaintiff's accident. Sig Sauer also moves pursuant to Fed. R. Civ. P 12 (b)(6) for dismissal of Plaintiff's design defect claims to the extent they are based on the absence of external safeties, and for dismissal of Plaintiff's claims for manufacturing defect, failure to warn, gross negligence and exemplary damages. These claims continue to be contrary to Texas handgun product liability law and are not sufficiently supported by factual allegations in the FAC.

**FACTUAL BACKGROUND**

Sig Sauer manufactures firearms for sale to law enforcement, the military, and private purchasers. FAC ¶ 2. One such firearm is the P320 semi-automatic pistol. Sig Sauer manufactures multiple versions of the P320 with different features for purchasers to choose (or not choose) in order to customize their pistol. *See id.* ¶ 5 (including historic image from Sig Sauer website); *see also* https://www.sigsauer.com/firearms/pistols/p320.html (last visited Sep. 23, 2025).[1]

---

[1] When reviewing a motion to dismiss, district courts may consider documents referenced in the complaint that are central to plaintiff's claims. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). Plaintiff has included images from the Sig Sauer website in his FAC, and courts may take judicial notice of publicly available documents. *See Stanfield v. Boston Scientific Corp.*, 166

1

Plaintiff Richard Fernandez, Jr., a member of the Houston Police Department, alleges that while on duty on January 20, 2025, he experienced an unintended discharge of his holstered P320 pistol that resulted in injuries to his right calf and ankle. FAC ¶¶ 33-35, 37.

Plaintiff alleges he purchased his P320 pistol himself. *Id.* ¶ 30. He further alleges that he "never pulled the trigger or otherwise handled the gun" and "did not touch the Subject Handgun at all" at the time of the incident. *Id.* ¶¶ 34, 37. Plaintiff does not allege any specific facts relating to the handgun in question or as to any post-incident inspection of the pistol that would explain the discharge. Rather, he alleges generally that the P320 has a "propensity to unintentionally discharge without any handling whatsoever or anyone pulling the trigger" (*id.* ¶ 50), and "is defective because it unintentionally discharges when the user did not pull the trigger or, as in this case, when the gun is holstered and the user is not even handling the gun at all." *Id.* ¶ 3. Plaintiff further alleges that Sig Sauer's failure to adequately

---

F. Supp. 3d 873, 877, 879 (S.D. Tex. 2015) (taking judicial notice of FDA websites "as a matter of public record" because "[t]aking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment."). Further, a court may consider matters of which it can take judicial notice on a motion to strike pursuant to Rule 12(f). *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1170 (C.D. Cal. 2011); *Cf. Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (holding that on a motion to dismiss courts may consider matters of which it can take judicial notice).

warn him of the risk of unintentional discharges caused his injuries. *See, e.g., id*. ¶¶ 44, 52.

Despite alleging the distinct circumstances of his own accident, Plaintiff's FAC contains numerous allegations that relate to purported design defects that could not be a cause of his injuries. Paragraphs 6, 24, 25 and 26 reference reports of unintentional discharges from "drop fires," which Plaintiff affirms did not occur here. And Paragraphs 27, 43, 55, 65 and 66 contain allegations pertaining to the lack of external safeties, which it is alleged would have prevented a trigger pull that Plaintiff likewise alleges did not occur with his accident.

At the same time, Plaintiff fails to allege facts sufficient to support a finding in his favor on a number of his legal claims. He alleges that the P320 was defective due to a lack of an external safety, but he does not dispute – as noted in Sig Sauer's original Motion – that he had the option to purchase the handgun with an external safety but elected not to do so. He alleges a manufacturing defect but not any facts that would support a claim that his P320 deviated from approved product specifications. And he rests his failure to warn claims on an alleged failure to warn of the "open and obvious" dangers posed by firearms and disregards the warnings that Sig Sauer provided in its product manual.

For the reasons set forth below, Plaintiff's extraneous allegations relating to alleged product defects that could not have been the cause of his accident should be

stricken, and his claims for design defect relating to external safeties, manufacturing defect, and failure to warn should be dismissed. Further, Plaintiff's claims for gross negligence and exemplary damages should be dismissed because he relies on conclusory allegations rather than facts to support his necessary showing that Sig Sauer had actual, subjective awareness of the risk involved and chose to proceed with conscious indifference.

## LEGAL STANDARD

Courts must dismiss a complaint under Rule 12(b)(6) where it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified Fed. R. Civ. P. Rule 8's specificity standards for pleadings, holding that a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Stanfield v. Boston Scientific Corp.*, 166 F. Supp. 3d 873, 876 (S.D. Tex. 2015) (quoting *Twombly*, 550 U.S. at 555). Rather, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Stanfield*, 166 F. Supp. 3d at 876 (quoting *Twombly*, 550 U.S. at 570). "[T]hreadbare recitals of the elements of a cause of action," legal conclusions, and "mere conclusory statements do not suffice" under Rule 12(b). *Id.* at 876 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Courts also may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Allegations in a complaint are immaterial if they "can have no possible bearing upon the subject matter of the litigation." *Baytown Christian Fellowship Church v. Underwriters at Lloyd's, Lond.*, No. H-10-5173, 2012 WL 3129094, at *1 (S.D. Tex. July 31, 2012) (quoting *Sadler v. Benson Motors Corp.*, No. 97-1083, 1997 WL 266735, at *1 (E.D. La. May 15, 1997)). Further, they are impertinent if they "do not pertain, and are not necessary, to the issues in question…" *La. Crawfish Producers Ass'n-W. v. Mallard Basin, Inc.*, No. 6:10-cv-01085-RFD-PJH, 2014 WL 782984, at *3 (W.D. La. Feb. 24, 2014) (citing Wright & Miller's Federal Practice & Procedure § 1382 (3d ed.)). Rule 12(f) motions "serve[] to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Elsdon v. U.S. Physical Therapy, Inc.*, No. 4:18-CV-01766, 2021 WL 8945136, at *2 (S.D. Tex. Nov. 30, 2021) (quoting *Zytax, Inc. v. Green Plains Renewable Energy, Inc.*, No. H-09-2582, 2010 WL 2219179, at *5 (S.D. Tex. May 28, 2010)). Courts have broad discretion in determining whether allegations should be stricken. *Gilchrist v. Schlumberger Tech. Corp.*, 321 F.R.D. 300, 302 (W.D. Tex. 2017) (citing *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979)).

5

## **ARGUMENT**

I.  **Plaintiff's Allegations Pertaining to External Safeties, Drop Fires and Inadvertent Trigger Pulls Should Be Stricken As Immaterial Because They Have No Bearing on the Facts or Law of This Case.**

As clearly stated in the FAC, Plaintiff is alleging that some defect in the P320 caused his gun to accidentally discharge while it was fully holstered and not being handled in any way. He does allege one design defect theory that if proven – which Sig Sauer will demonstrate he cannot – could be relevant to his accident. Plaintiff alleges that the P320 pistol lacked "adequate internal safety mechanisms," the internal safeties "fail[] to prevent the movement of any internal components," and the failure of these safeties to "prevent the movement of any firing mechanism internal component part unless the trigger is first pulled" were "a producing cause of Officer Fernandez's injuries and his damages." FAC ¶¶ 27, 43, 55, 65, 66.

While Sig Sauer is confident that these allegations are without merit, it is not here seeking to dismiss these properly-alleged claims. Sig Sauer will defend against those allegations through fact and expert discovery, dispositive Rule 702 and summary judgment briefing, and trial if necessary. What Sig Sauer should not be required to do, however, is respond to a scattershot series of other design defect theories that could not have caused Plaintiff's accident.

The FAC makes clear that Plaintiff did not drop his gun. *Id*. ¶¶ 6, 27. Nonetheless, the FAC is replete with allegations that the P320 is defective because

6

of a propensity to "drop fire." *Id*. ¶¶ 6, 24, 25, 26. The FAC also states that the trigger of the P320 was not pulled and that the gun was not even being handled at the time of the accident. *Id*. ¶¶ 34, 37. But the FAC proceeds, inexplicably, to repeatedly allege that the P320 was defective because of a lack of external safeties to prevent the trigger from being pulled. *Id*. ¶¶ 27, 43, 55, 65, 66. These allegations have "no possible bearing upon the subject matter of the litigation" and should be stricken as immaterial and impertinent. *Idar v. Cooper Tire & Rubber Co.*, No. C-10-217, 2010 WL 3702579, at *3 (S.D. Tex. Sep. 15, 2010) (quoting *Pan Am. Life Ins. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962)); Fed. R. Civ. P. 12(f).

Allowing these allegations to remain in the FAC would result in significant prejudice to Sig Sauer and require Sig Sauer, as well as the Court, to expend time, resources, and effort on issues that could have no bearing on the resolution of the case. *See Boyd's Bit Serv., Inc. v. Specialty Rental Tool & Supply, Inc.*, 332 F. Supp. 2d 938, 944 (W.D. La. 2004). Sig Sauer would be required to investigate these allegations through fact discovery, prepare expert testimony on design defect theories that have no possible bearing on Plaintiff's injuries, and engage in dispositive motion practice relating to issues not relevant to the case. *Connell Trucking Co. v. Estes Express Lines*, 2022 WL 21712355, at *5 (W.D. Tex. Nov. 30, 2022) (increased litigation costs are a form of prejudice) (citing *Rios v. City of Conroe*, 674 F. App'x 366, 372 (5th Cir. 2016)). And the Court, likewise, will be

called upon to address discovery and dispositive arguments regarding these issues to no purpose. These allegations should be stricken. *See Doe v. Roman Cath. Diocese of Galveston-Hou.*, No. H-05-1047, 2006 WL 2413721, at *2 (S.D. Tex. Aug. 18, 2006) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)); *see also U.L. Coleman Co. v. Bossier City-Par. Metro. Plan. Comm'n*, No. 08–2011, 2015 WL 6506173, at *2-3 (W.D. La. Oct. 27, 2015) (granting Rule 12(f) motion to strike statements because they would cause defendant to expend "funds in responding to an immaterial argument…").

## II.    Plaintiff's Negligence and Strict Liability Allegations Premised on the Lack of an External Safety Fail Because Texas Law Does Not Permit Such Claims When a Purchaser Elects to Buy a Version of a Product Without an Optional Safety Device Offered by the Manufacturer.

In pursuing claims for negligence and strict liability, Plaintiff repeatedly argues that Sig Sauer should be held liable for failing to equip his P320 pistol with an external safety. *See, e.g.,* FAC ¶¶ 27, 43, 55, 65, 66. As noted above, these allegations have no connection with the claimed circumstances surrounding Plaintiff's accident and should be stricken for that reason. The claims also should be dismissed under Fed. R. Civ. P. 12(b) because they do not allow the court to infer "that the defendant is liable for the misconduct alleged" under Texas law.[2] *Stanfield*, 166 F. Supp. 3d at 876 (quoting *Iqbal*, 550 U.S. at 556).

---

[2] For the purposes of this motion, Sig Sauer assumes that Plaintiff asserts his claims pursuant to Texas law. Sig Sauer does not, however, waive any argument as to choice

As Sig Sauer stated in its initial Motion, it offers purchasers the option of equipping the P320 pistol with an external safety. This is made clear in the same Company website Plaintiff cites in his FAC.[3] Plaintiff's allegation that his handgun did not come equipped with an external safety shows that he elected not to avail himself of this option. He cannot, however, convert his *consumer choice* into a *design defect* claim against Sig Sauer. To the contrary, Texas law is clear that a manufacturer may not be held liable for design defect when it offers optional safety equipment that could have prevented the alleged injury, and the buyer elects not to purchase it. *See Banzhaf v. ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180, 187 (Tex. App.—Eastland 2000).

---

of law and expressly reserves the right to argue that the law of Texas or any other state should apply to Plaintiff's claims in this lawsuit.

[3] When reviewing a motion to dismiss, district courts may consider documents (here, the website) referenced in the complaint that are central to plaintiff's claims. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). The website shows that Sig Sauer offers purchasers the option of equipping P320s with a thumb safety. *See*, *e.g.*, Sig Sauer P320-M18, https://www.sigsauer.com/p320-m18.html (last visited Sep. 23, 2025). The P320 Manual, likewise incorporated in the FAC by reference at paragraph 11, explains that "The SIG SAUER P320 is offered with an optional ambidextrous manual safety. The manual safety mechanically blocks the movement of the trigger bar, preventing release of the striker." *See* Sig Sauer, *Sig P320® Pistols Operator's Manual: Handling & Safety Instructions* 29 (2021), https://www.sigsauer.com/media/sigsauer/resources/OPERATORS_MANUAL_P320_8501909-01_REV08_LR.pdfRS_MANUAL_P320_8501909-01_REV08_LR.pdf.

In *Banzhaf*, a sporting goods store, an employee, and the parents of a deceased employee filed suit against security company ADT following a robbery. *Id*. at 184. Plaintiffs alleged that the security system at the store was defectively designed because a "duress code" (a silent alarm to be used in hostage situations) was not a standard feature. *Id*. at 187. The security department for the sporting goods store chain chose not to purchase the safety feature. *Id*. The court held the following:

> The deterrence of crime involves many complex issues. [The sporting goods chain] adopted a policy of refusing the duress code because it believed that the use of the duress code might endanger employees . . . We refuse to abrogate a store owner's right to select the security devices and services that it deems best to protect its property or its employees. We find, as a matter of law, that plaintiffs have shown no defectively designed product in this case.

*Id*. at 187.

Plaintiff alleges that he purchased his P320 pistol himself. FAC ¶ 30. It was he, not Sig Sauer, who elected against equipping the gun with the "external safeties." Texas law does not hold manufacturers liable for the considered decisions of its customers in choosing among available product designs and weighing their own individual safety needs.[4] These allegations should be dismissed.

---

[4] To the extent Plaintiff argues that manufacturers should be held liable for offering citizens the option to purchase a handgun without a manual thumb safety, which said citizens determine might interfere with their ability to rapidly respond as they deem necessary for self-defense, Plaintiff's claims also may run afoul of the Second Amendment's right to keep and bear arms. *See Mock v. Garland*, 697 F. Supp. 3d 564, 581-82 (N.D. Tex. 2023) (granting motion for preliminary injunction against enforcement of Final Rule that would criminalize plaintiffs' possession of lawful

### III. Plaintiff Fails to Allege Facts Sufficient to State a Claim for Manufacturing Defect.

Plaintiff also alleges that Sig Sauer should be held liable for manufacturing defect, but the FAC (and original Petition) fails to allege supporting facts. "In Texas, a manufacturing defect results when a product deviates 'from the specifications or planned output in a manner [sic] that renders it unreasonably dangerous.'" *Miller v. Bridgestone Ams. Tire Operations*, *LLC*, No. 1:21-CV-437-RP, 2023 WL 2138182, at *3 (W.D. Tex. Feb. 21, 2023) (quoting *Fearrington v. Boston Scientific Corp.*, 410 F. Supp. 3d 794, 802 (S.D. Tex. 2019)), *report and recommendation adopted*, No. 1:21-CV-437-RP, 2023 WL 2921339 (W.D. Tex. Apr. 12, 2023). "Texas law does not generally recognize a product failure or malfunction, standing alone, as sufficient proof of a product defect." *Id.* (citing *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006)). Accordingly, "[t]o satisfy federal pleading standards, plaintiffs asserting a manufacturing defect must allege sufficient facts to: (1) specify the manufacturing defect; (2) explain how the manufacturing process failed or deviated from the approved specifications; and (3) specify a causal connection between the specific failure in the manufacturing process and the specific

---

firearms equipped with lawful brace modification, because it would "impair and threaten to deprive them of their fundamental right to keep and bear ... arms"); *id.* at 578 (finding it lawful for citizens to choose to attach stabilizing brace to pistols "to more easily and comfortably accomplish the narrow end goals of self-defense").

defect which caused the injury." *Albaugh v. Wind Access Eng'g, Inc.*, No. 1:23-cv-00146, 2025 WL 1699195, at *5 (S.D. Tex. May 16, 2025).

Texas federal courts dismiss allegations of manufacturing defect that simply recite the elements of such a claim without specifying the "[t]he deviation from design that caused the injury." *Miller*, 2023 WL 2138182, at *3 (quoting *Casey v. Toyota Motor Eng'g & Mfg. N. Am. Inc.*, 770 F.3d 322, 326 (5th Cir. 2014)) ("The plaintiff in a manufacturing defect case must identify a specific defect."); *see, e.g., Albaugh*, 2025 WL 1699195, at *6; *Williams v. Gen. Binding Corp.*, No. 3:23-CV-00850-K, 2024 WL 628850, at *3 (N.D. Tex. Feb. 14, 2024) (granting motion to dismiss manufacturing defect claim because plaintiff "alleges only that some manufacturing defect caused the machine to activate unexpectedly and potentially trap users' arms and hands," but "has not explained what error in the manufacturing of the laminating machine she used made the machine defective"); *Miller*, 2023 WL 2138182, at *2-3.

Plaintiff does not allege any facts specifying a manufacturing defect or any manner in which the manufacturing process deviated from approved specifications. Instead, he "pleads" his claim by asserting the type of conclusory allegations that Texas federal courts reject. *See, e.g.,* FAC ¶ 46 (alleging Plaintiff's P320 "contained manufacturing defects at the time if left the possession of SIG**,** *i.e.,* the Subject Handgun deviated in its construction or quality from its specifications or planned

output in a manner that rendered it unreasonably dangerous" and was "dangerous to an extent beyond that which would be contemplated by the ordinary user of the firearm with the ordinary knowledge common to the community"); *id.* ¶¶ 47-48 (alleging his P320 "reached Officer Fernandez without substantial change in its condition").

Plaintiff's failure to "describe the features of the [product] that fail to meet manufacturing specifications," is "fatal to [his] claims." *Williams*, 2024 WL 628850, at *3. The manufacturing defect claims in the FAC should be dismissed.

## IV. Plaintiff Fails to Allege Facts Sufficient to State a Claim for Failure to Warn.

Texas courts repeatedly have rejected failure to warn claims brought against manufacturers of handguns. In *Keene v. Sturm, Ruger and Co.*, 121 F. Supp. 2d 1063 (E.D. Tex. 2000), the court explained that such claims face a high hurdle because Texas law does not impose any duty to warn of dangers that "are open and obvious." *Keene*, 121 F. Supp. 2d at 1068-69 (granting summary judgment as a matter of law holding that "there is no duty to warn of the obvious dangers of owning or selling a handgun"). Numerous other Texas courts have agreed. *See Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1275 (5th Cir. 1985) ("[D]angers of handguns are obvious and well-known."); *Foltz v. Smith & Wesson Corp.*, No. 3:08–CV–0858–K, 2009 WL 2596598, at *2 (N.D. Tex. Aug. 20, 2009) (gun manufacturer had "no duty to warn of the dangers associated with the revolver"); *Patterson v. Rohm Gesellschaft*, 608

13

F. Supp. 1206, 1209 n.7 (N.D. Tex. 1985) (no duty to warn of dangers of handgun use that are obvious and commonly known); *Diggles v. Horwitz*, 765 S.W.2d 839, 842 (Tex. App.—Beaumont 1989) (no duty to warn sellers of the hazards of selling handguns); *but see Roberts v. Zev Techs., Inc.*, No. 1:15-CV-309 RP, 2015 WL 7454688 (W.D. Tex. Nov. 23, 2015) (denying motion to dismiss failure to warn claim where complaint included specific factual allegations to support claim that gun was prone to drop discharges).

As Sig Sauer explained in its motion to dismiss the Original Petition, Plaintiff's allegation that "[t]here is a risk of harm inherent in SIG's P320 pistols…that arises from its intended or reasonably anticipated use" (FAC ¶ 49) involves the exact type of "open and obvious" danger for which no duty exists. *Keene*, 121 F. Supp. 2d at 1068. Firearms are inherently and intentionally dangerous products that are properly designed to cause physical injury or project the risk of such injury to provide for self-protection. Owners of handguns are – and certainly should be – well aware of these dangers and of the risks inherent in the use of such products. Indeed, a handgun's "normal function is to propel bullets with deadly force." *Id.*

Moreover, while Plaintiff incorporates by reference the P320 Operator's Manual in support of his failure to warn claim, he makes no mention of the warnings contained in that manual. Under Texas law, "[t]he existence of a duty to warn of

14

danger or instruct as to the proper usage of a product is a question of law." *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 549 (Tex. App.—San Antonio 2001) (citing *Robins v. Kroger Co.*, 982 S.W.2d 156, 160 (Tex. App.—Houston 1998)); *see also Seifried v. Hygenic Corp.*, 410 S.W.3d 427, 433 (Tex. App.—Houston 2013) (citation omitted) ("[I]f a warning specifically mentions the circumstances complained of, then the warning is adequate as a matter of law"); *Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607, 609 (Tex. App.—Waco 1993).

Here, the Sig Sauer P320[5] Operator's Manual contains explicit warnings regarding the very risks of which Plaintiff alleges Sig Sauer failed to warn. Plaintiff alleges that Sig Sauer failed to warn Plaintiff of the risk of unintentional discharge (FAC ¶ 50), but the Manual repeatedly alerts users to the potential risk in carrying a loaded handgun, stating that "failure to ensure the firearm is unloaded and cleared could result in unintentional discharge, causing severe injury or death, or property damage."[6] While Sig Sauer does not endorse any particular philosophy of use, the Manual also explicitly alerts users to the potential risk in carrying the handgun with

---

[5] Plaintiff's FAC expressly references Sig Sauer's Manual which may be incorporated by reference. *See, e.g.,* FAC ¶ 11.

[6] Sig Sauer, *Sig P320® Pistols Operator's Manual: Handling & Safety Instructions* 54, 76 (2021) https://www.sigsauer.com/media/sigsauer/resources/OPERATORS_MANUAL_P320_8501909-01_REV08_LR.pdfRS_MANUAL_P320_8501909-01_REV08_LR.pdf.

a chambered round, stating that the user should "not load a cartridge into the chamber until you are ready to use the firearm."[7]

The Manual also provides multiple warnings that users should not rely exclusively on a firearm's safety components, as such safety components are no replacement for the user's own safe handling practices:

> Like all mechanical devices, the safety mechanisms are subject to breakage or malfunction and can be negatively affected by wear, abuse, dirt, corrosion, incorrect assembly, improper adjustment or repair, or lack of maintenance. Moreover, there is no such thing as a safety mechanism . . . that can completely prevent accidental discharge from improper usage, carelessness, 'horseplay', or abusive handling.[8]

And while the dangers of unsafe handling practices with a firearm are obvious and well-known, the Manual repeatedly states that "[f]ailure to heed any of these warnings may result in serious injury or death to you or others, as well as severe damage to the firearm or other property."[9] Plaintiff's claims for failure to warn (FAC ¶¶ 49-52) should be dismissed.

---

[7] *Id.* at 4.

[8] *Id.* at 3 (also noting "Your firearm comes equipped with effective, well-designed safety features. However, never rely completely on any safety mechanism. Safety mechanisms are designed to augment, not replace safe handling practices. Careless and improper handling of any firearm can result in an unintentional discharge…The best safety is proper and applied training in safe firearm handling. Always handle your firearm as though you expect the safeties not to work.").

[9] *Id.* at 2; *see also id.* at 3.

**V.    Plaintiff's Claim for Exemplary Damages and Allegations of Gross Negligence Are Unsupported By the Requisite Facts and Should Be Dismissed.**

Finally, Plaintiff's FAC is devoid of the supporting facts required to support his claims of gross negligence or his request for exemplary damages. To state a claim for exemplary damages, Plaintiff must "prove by clear and convincing evidence that the plaintiff's harm resulted from, *inter alia*, the defendant's willful act or gross neglect." *THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 579 (Tex. App.— Amarillo 2010) (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(3), (b)). To sufficiently allege gross negligence, Plaintiff must plead facts that would satisfy the high bar of showing both that "from the actor's standpoint, the act or omission complained of must depart from the ordinary standard of care to such an extent that it creates an extreme degree of risk of harming others…[and], the actor must have actual, subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights, safety, or welfare of others." *Id*. at 580 (citing *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784-86 (Tex. 2001)).

Texas federal courts reject allegations of gross negligence that fail to plead facts to flesh out the tenets of this standard, such as the magnitude and probability of the claimed "extreme degree of risk." *See, e.g., Williams v. Gen. Binding Corp.*, No. 3:23-CV-00850-K, 2024 WL 3816765, at *2-3 (N.D. Tex. June 5, 2024) (dismissing request for exemplary damages because "conclusory" allegations

17

employed legal terminology but pled "no factual allegations clarifying the likelihood or magnitude of such injuries"); *Albaugh,* 2025 WL 1699195, at \*14.

Here, Plaintiff "pleads" gross negligence in support of his exemplary damages claim by reciting this standard, nearly verbatim, without providing non-conclusory allegations to flesh it out. *See* FAC ¶ 72 ("Defendants' acts or omissions, when viewed objectively from Defendants' standpoint at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others."); *id.* at ¶ 69 ("Defendants' above-referenced breaches involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others of being shot by a firearm, . . ."). Plaintiff's only response to Sig Sauer's initial motion to dismiss his gross negligence claims is to add an allegation in the FAC that Sig Sauer had an actual, subjective awareness of risk based on "the number of known lawsuits and publicly available reports and investigations" of accidental discharges among the millions of P320 pistols in circulation. *Id.* at ¶ 69 n.17. But even assuming that the existence of other, sharply-contested lawsuits could establish actual, subjective awareness, Plaintiff does not allege facts that establish that those other lawsuits involve accidents sufficiently similar to the alleged facts in this case to even be admissible, let alone establish a

basis for punitive damages. *See Johnson v. Ford Motor Co.*, 988 F.2d 573, 579-80 (5th Cir. 1993); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 131-135 (Tex. 2012); *see also Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 142 (Tex. 2004) ("To sum up, product defects must be proved; they cannot simply be inferred from a large number of complaints. If the rule were otherwise, product claims would become a self-fulfilling prophecy—the more that are made, the more likely all must be true.").

Plaintiff's allegations of gross negligence fail for the additional reason that, as discussed above, many of plaintiff's allegations of "ordinary negligence" premised on design defect and failure to warn do not state viable claims under Texas law. *See Albaugh*, 2025 WL 1699195, at *14 ("To the extent [plaintiff's] gross negligence claims are predicated on his earlier negligence claims, they fail as a matter of law; a prerequisite to a valid gross negligence claim is ordinary negligence.").

Accordingly, Plaintiff's allegations of gross negligence and claim for exemplary damages all should be dismissed. *See Cofresi v. Medtronic, Inc.*, 450 F. Supp. 3d 759, 768 (W.D. Tex. 2020); *Herbst v. Deere & Company*, No. 3:21-CV-44, 2021 WL 5567379, at *6 (S.D. Tex. Nov. 29, 2021).

## **CONCLUSION**

For the forgoing reasons, the Court should (1) strike pursuant to Fed. R. Civ. P. 12(f), Plaintiff's immaterial allegations relating to external safeties, inadvertent

19

trigger pulls, and drop fires; and (2) dismiss pursuant to Fed. R. Civ. P. 12(b)(6),

Plaintiff's design defect claims to the extent they rely on an absence of external

safeties, and claims for manufacturing defect, failure to warn, gross negligence and

exemplary damages. Plaintiff had previously been apprised of his pleading defects

in Sig Sauer's original Motion (Dkt. 4) and availed himself of the opportunity to

amend his complaint. Because he failed to plead additional allegations to address

these pleading deficiencies, dismissal of his claims should be with prejudice.


Dated:        September 25, 2025            Respectfully Submitted,


                                    By:    /s/ H. Scott Alexander
                                           H. Scott Alexander (attorney-in-
                                           charge)
                                           State Bar No. 00793247
                                           S.D. Tex. Bar No. 3324305
                                           CLARK HILL PLC
                                           2615 Calder Avenue, Suite 240
                                           Beaumont, Texas 77702
                                           Telephone:  409.351.3801
                                           Facsimile:  409.351.3883
                                           hsalexander@clarkhill.com

Of Counsel:

Eric G. Lasker
D.C. Bar No. 430180
S.D. Tex. Bar No. 3622386
Brett F. Clements
N.Y. State Bar No. 5221650
S.D. Tex. Bar No. 3924860
Stephanie L. Salek

D.C. Bar No. 995738
S.D. Tex. Bar No. 3926658
Hollingsworth<sub>LLP</sub>
1350 I Street N.W.
Washington, D.C. 20005
(202) 898-5800 (Phone)
(202) 682-1639 (Fax)
ELasker@hollingsworthllp.com
BClements@hollingsworthllp.com
SSalek@hollingsworthllp.com

**COUNSEL FOR DEFENDANT,
SIG SAUER, INC.**


**<u>CERTIFICATE OF SERVICE</u>**

     I certify that on September 25, 2025, a copy of the foregoing was filed with

the Court and served on all counsel of record through the Court's CM/ECF system.


                           Respectfully Submitted,

                           */s/ H. Scott Alexander*
                           H. Scott Alexander