# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **RICHARD FERNANDEZ, JR.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 4:25-cv-04007** |
| | § | |
| **SIG SAUER, INC., and** | § | |
| **CTC GUNWORKS LLC** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S RESPONSE TO SIG SAUER, INC.'S MOTION TO STRIKE AND FOR PARTIAL DISMISSAL

### Summary of the Argument

This case is one of many cases across the country involving the P320 semi-automatic pistol manufactured by Defendant Sig Sauer, Inc. ("Defendant" or "SIG"). Plaintiff Richard Fernandez, Jr. ("Plaintiff" or "Officer Fernandez"), a Senior Police Officer with the Houston Police Department, purchased his own P320 in December of 2022, and on January 20, 2025, it shot him.

The Court should reject SIG's attempt to narrow the scope of relevant issues at the outset of this case. All of the allegations that SIG seeks to strike are relevant to, and have a bearing on, Officer Fernandez's claims. Specifically, prior instances relating to the P320's history of drop fires, as well as subsequent design revisions implemented to correct that issue, will have a bearing on the subjective knowledge

i

element of Officer Fernandez's gross negligence claim. Similarly, allegations pertaining to inadvertent trigger pulls and external safeties are directly relevant to design defect claims that Officer Fernandez has pled in the alternative. Because none of these allegations pertain to "immaterial, redundant, or scandalous" matters, SIG's motion to strike any portion of the Amended Complaint should be denied.

SIG's request to dismiss any of Officer Fernandez's claims, or any part of his design defect claim, should similarly be denied because accepting Officer Fernandez's allegations as true, he has sufficiently stated each of these claims under Texas law.

As noted above, Officer Fernandez has permissibly asserted the lack of an external safety as an alternative basis that supports his claim that the P320 was defectively designed. Contrary to SIG's contention, Texas law does not provide that the existence of an optional safety feature will preclude a design defect claim as a matter of law. As to his manufacturing defect claim, Officer Fernandez sufficiently pled this claim as well because he alleged that the P320's defects cause it to function in a manner not intended by SIG.

With regards to his marketing defect claim, Officer Fernandez objects to the Court's consideration of matters outside of the Amended Complaint that were not attached to his complaint or SIG's motion, that are not central to his claims, and that are not documents for which the Court may take judicial notice. More importantly,

the relevant version of those documents are in the form in which they existed when the P320 was marketed and sold to Officer Fernandez. Even if the Court considers these documents, they do not conclusively establish that the warnings contained were adequate because the warnings do not address the circumstances when Officer Fernandez was shot. *I.e.*, the warnings do not address the P320's propensity to spontaneously discharge during normal carrying or its propensity to discharge without an intentional trigger actuation.

Finally, Officer Fernandez pled specific and nonconclusory facts to support his gross negligence claim and his request for exemplary damages. SIG's contention otherwise simply ignores the allegations in his pleading. Moreover, dismissing this claim solely because it is predicated on ordinary negligence would also be in error because SIG has not even challenged all design defect grounds that support Officer Fernandez's products liability and ordinary negligence claims.

Based on the foregoing, SIG's motion for partial dismissal of Officer Fernandez's claims should be denied in its entirety.

iii

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL BACKGROUND.....................................................................1

III.   LEGAL STANDARDS ............................................................................2

IV.   ARGUMENT AND AUTHORITIES .......................................................3

    A.    SIG's Motion to Strike Should Be Denied. ................................3

    B.    SIG's Motion to Partially Dismiss Plaintiff's Design Defect Claim Should Be Denied. ...............................................................6

    C.    SIG's Motion to Dismiss Plaintiff's Manufacturing Defect Claim Should Be Denied. ...............................................................9

    D.    SIG's Motion to Dismiss Plaintiff's Marketing Defect Claim Should Be Denied....................................................................10

        1.    Objection to Considering SIG's Website and Operator's Manual.10

        2.    Officer Fernandez Sufficiently Stated His Marketing Defect Claim. .......................................................................13

    E.    SIG's Motion to Dismiss Plaintiff's Gross Negligence Claim and Request for Exemplary Damages Should Be Denied. ............................................17

V.    CONCLUSION.....................................................................................20

iv

# TABLE OF AUTHORITIES

**Cases**

*Albaugh v. Wind Access Eng'g, Inc.*,
No. 1:23-CV-00146, 2025 WL 1699195 (S.D. Tex. May 16, 2025) ............... 13, 19

*Allen v. W.A. Virnau & Sons, Inc.,*
28 S.W.3d 226, 229 (Tex. App.—Beaumont 2000, pet. denied) ..............................6

*Am. Tobacco Co. v. Grinnell*,
951 S.W.2d 420 (Tex. 1997).................................................................... 9, 10

*Banzhaf v. ADT Sec. Sys. Sw., Inc.*,
28 S.W.3d 180 (Tex. App.—Eastland 2000, pet. denied) .....................................6, 8

*Boyd's Bit Serv., Inc. v. Specialty Rental Tool & Supply, Inc.*,
332 F. Supp. 2d 938 (W.D. La. 2004) ........................................................................4

*Centex Homes v. Lexington Ins. Co.*,
No. 3:13-CV-719-BN, 2014 WL 1225501 (N.D. Tex. Mar. 25, 2014)....................3

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .....................................................................................11

*Connell W. Trucking Co. v. Estes Express Lines*,
No. EP-20-CV-312-KC, 2022 WL 21712355 (W.D. Tex. Nov. 30, 2022)...............5

*Contra Blythe v. Bumbo Int'l Tr.*,
No. 6:12-CV-36, 2013 WL 6190284 (S.D. Tex. Nov. 26, 2013)............................12

*Cook v. Caterpillar, Inc.*,
849 S.W.2d 434 (Tex. App.—Amarillo 1993, writ denied) .....................................7

*Davis v. Sig Sauer, Inc.*,
126 F.4th 1213 (6th Cir. 2025) ...............................................................................8, 9

*Doe v. Roman Cath. Diocese of Galveston-Houston*,
No. CIV.A. H-05-1047, 2006 WL 2413721 (S.D. Tex. Aug. 18, 2006)..................5

*Genie Indus., Inc. v. Matak*,
462 S.W.3d 1(Tex. 2015)..................................................................................7

*Harrison v. Medtronic, Inc.*,
No. 22-10201, 2022 WL 17443711 (5th Cir. Dec. 6, 2022)...................................16

*Humble Sand & Gravel, Inc. v. Gomez*,
146 S.W.3d 170 (Tex. 2004)..............................................................................15

*Idar v. Cooper Tire & Rubber Co.*,
No. C-10-217, 2010 WL 3702579 (S.D. Tex. Sept. 15, 2010).............................3, 4

*Inthavong v. Roosa*,
No. 4:21-CV-00366, 2021 WL 5999279 (S.D. Tex. Dec. 20, 2021) ............... 17, 19

*Keene v. Sturm, Ruger & Co.*,
121 F. Supp. 2d 1063 (E.D. Tex. 2000)...................................................................14

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ................................................................................11

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ................................................................................2

*Nicolas v. Thaler*,
No. CIV.A. H-10-0515, 2010 WL 4919069 (S.D. Tex. Nov. 24, 2010)..................4

*Olympic Arms, Inc. v. Green*,
176 S.W.3d 567 (Tex. App.—Houston [1st Dist.] 2004, no pet.).............. 10, 13, 16

*Payne v. City of Houston, Texas*,
No. 24-20150, 2025 WL 999085 (5th Cir. Apr. 3, 2025)................................ 11, 12

*Perkins v. F.I.E. Corp.*,
762 F.2d 1250 (5th Cir. 1985) ...............................................................................14

*Ranger Conveying & Supply Co. v. Davis*,
254 S.W.3d 471 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ...................13

*Rizzo v. Blues Mgmt., Inc.*,
No. 4:16-CV-01017, 2017 WL 549016 (S.D. Tex. Jan. 24, 2017) .........................3

*Roberts v. Zev Techs., Inc.*,
No. 1:15-CV-309 RP, 2015 WL 7454688 (W.D. Tex. Nov. 23, 2015) ........... 15, 19

*Scanlan v. Texas A&M Univ.*,
343 F.3d 533 (5th Cir. 2003) ........................................................... 11, 12

*Sears, Roebuck & Co. v. Kunze*,
996 S.W.2d 416 (Tex. App.—Beaumont 1999, pet. denied)....................................6

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)................................................................... 9, 16

*Test Masters Educ. Servs., Inc. v. Singh*,
428 F.3d 559 (5th Cir. 2005) ...................................................................2

*United States v. Coney,*
689 F.3d 365 (5th Cir.2012) ...................................................................3

*Williams v. Gen. Binding Corp.*,
No. 3:23-CV-00850-K, 2024 WL 628850 (N.D. Tex. Feb. 14, 2024)....................19

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 41.001(11).........................................................18

TEX. CIV. PRAC. & REM. CODE § 41.003(a) ..........................................................20

TEX. CIV. PRAC. & REM. CODE § 82.006(b).............................................................7

## Rules

FED. R. CIV. P. 12(b)(6).....................................................................................................20

FED. R. CIV. P. 12(f) ...........................................................................................................3

FED. R. CIV. P. 15(a)(2)......................................................................................................20

FED. R. CIV. P. 8(d)(2),(3) ...............................................................................................5, 7

FED. R. EVID. 201(b) ..........................................................................................................12

Fed. R. Evid. 201(b)(1), (2) ...............................................................................................12

## I.    INTRODUCTION

SIG's motion to strike improperly seeks to narrow the relevant issues at the outset of the case before the parties have had the benefit of discovery. Because Officer Fernandez's allegations pertaining to drop fires, inadvertent trigger pulls, and external safeties are relevant to – and certainly have a bearing on – Officer Fernandez's claims, SIG's motion to strike should be denied.

SIG's motion to partially dismiss Officer Fernandez's claims should also be denied because it purports to hold Plaintiff to a higher pleading standard than the law requires at this early stage of the case. Viewing the fact alleged in the Amended Complaint in Officer Fernandez's favor, he sufficiently stated his each of his products liability claims under Texas law. SIG's motion to dismiss should be denied.

## II.    FACTUAL BACKGROUND

SIG Sauer's P320 has had an arduous past since it hit the market in 2014. Officer Fernandez's First Amended Complaint sets this out in particularized detail. *See* ECF No. 10 (Am. Compl.) ¶¶ 2–12, 24–28.

Officer Fernandez purchased his SIG Sauer P320 (the "Subject Handgun") to use as his duty weapon as a Senior Police Officer with the Houston Police Department in December 2022. *Id*. ¶ 30. On January 20, 2025, when Officer Fernandez was directing traffic, the Subject Handgun discharged while fully secure

1

in its holster. *Id*. ¶ 35. The bullet shot through Officer Fernandez's right calf and lodged in his ankle. *Id*. ¶ 37.

Officer Fernandez alleges primarily that the Subject Handgun spontaneously discharged without any trigger actuation whatsoever. However, at this early stage, the precise circumstances which caused the Subject Handgun to discharge have not been litigated or determined.

Officer Fernandez alleges that the P320 is defectively designed on a number of various and alternative bases. *See id*. ¶¶ 27, 40–44. Officer Fernandez also asserts products liability claims for SIG's defective manufacturing and marketing of the Subject Handgun, *id*. ¶¶ 45–52, as well as claims for ordinary negligence, gross negligence, and a request for exemplary damages. *Id*. ¶¶ 61–72.

## III.   LEGAL STANDARDS

Dismissal is only appropriate if it appears beyond doubt that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005) (internal citation omitted). The court must accept all factual allegations as true and "must also draw all reasonable inference in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal citations omitted) (reversing dismissal in part).

2

While Rule 12(f) permits a court to strike from a pleading . . . "any redundant, immaterial, impertinent, or scandalous matter[,]" it is "a drastic remedy[.]" *Idar v. Cooper Tire & Rubber Co.*, No. C-10-217, 2010 WL 3702579, at *2 (S.D. Tex. Sept. 15, 2010) (citing FED. R. CIV. P. 12(f)). Accordingly, "motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Id*.

### IV.    ARGUMENT AND AUTHORITIES

### A.    SIG's Motion to Strike Should Be Denied.

"The power to strike a pleading is within the Court's discretion but should be sparingly used." *Centex Homes v. Lexington Ins. Co.*, No. 3:13-CV-719-BN, 2014 WL 1225501, at *12 (N.D. Tex. Mar. 25, 2014) (citing *United States v. Coney,* 689 F.3d 365, 379 (5th Cir.2012)). A matter is not "redundant, immaterial, impertinent, or scandalous" if it is "directly relevant to the controversy at issue[.]" *Id*. (internal citation omitted). "A motion to strike based on immateriality or impertinency should be granted only when the pleading to be stricken has no possible relation to the controversy." *Rizzo v. Blues Mgmt., Inc.*, No. 4:16-CV-01017, 2017 WL 549016, at *3 (S.D. Tex. Jan. 24, 2017).

Because the facts that SIG seeks to strike relating to drop fires, external safeties, and inadvertent trigger pulls are directly relevant to Officer Fernandez's claims – against both SIG and CTC – SIG cannot meet its high burden of showing

these facts have "no possible relation to the controversy." *Nicolas v. Thaler*, No. CIV.A. H-10-0515, 2010 WL 4919069, at \*2 (S.D. Tex. Nov. 24, 2010).[1]

While Officer Fernandez's injury was not caused by a P320 that drop fired, that is not the end of the inquiry as to whether other drop fire incidents could have any possible bearing on his claims. For instance, the allegations pertaining to those incidents support Officer Fernandez's subjective knowledge allegations, which is a required element of his claims.[2] Am. Compl. ¶¶ 6, 24, 61–69, 71 (negligence, gross negligence, and request for exemplary damages).[3]

With regards to inadvertent trigger pulls and external safeties, these allegations also directly relate to Officer Fernandez's claims. Whether the P320 unintentionally discharges spontaneously or when the trigger is slightly grazed or jostled,[4] these circumstances all support Officer Fernandez's design defect claim. While Officer Fernandez primarily alleges that the Subject Handgun spontaneously fired while fully secured in his holster, Rule 8(d) expressly permits pleading

---

[1] As evidence of the high burden and courts' general disfavor of such motions, nearly every case SIG cites ultimately denied the motion to strike. *See id*. at \*3 (denying motion to strike); *Idar*, 2010 WL 3702579, at \*3 (denying motion to strike because complaint's allegations pertaining to manufacturing practices and industry standards all had a bearing on the litigation); *Boyd's Bit Serv., Inc. v. Specialty Rental Tool & Supply, Inc.*, 332 F. Supp. 2d 938, 944 (W.D. La. 2004) (denying motion to strike).

[2] Moreover, those drop–fire cases are not wholly unrelated to Officer Fernandez's claims *Id*. (noting class action included "one [claim] where, like here, the pistol remained fully holstered and was not dropped at all.").

[3] *See also* Motion to Remand, ECF 13, at 2, 12 (citing Am. Compl., ¶ 6).

[4] Am. Comp. ¶ 27 (describing defect regarding lack of external safety in conjunction with P320's extremely light trigger pull).

alternative theories of recovery, regardless of consistency. FED. R. CIV. P. 8(d)(2),(3). The thrust of Officer Fernandez's claim, under either theory, is that the Handgun's components allowed it to fire without intentional trigger actuation in a manner contrary to the expectations of an ordinary firearm consumer. Thus, this alternatively pled theory of relief is directly relevant to Officer Fernandez's claim and should not be stricken.

SIG's contention that it will suffer prejudice if these properly pled allegations are not struck should similarly be rejected. Discovery relating drop fires and inadvertent trigger pulls will be directly related to the defective design issues that SIG has not even challenged. *See* ECF 18, at 6 (expressly acknowledging that SIG intends to litigate Plaintiff's claims regarding lack of adequate internal safeties and the movement of internal components on the merits). The fact that discovery may touch on multiple manifestations of the defect is not prejudice. And the cases SIG cites to support its alleged prejudice are factually and procedurally distinguishable.[5]

The only party who will be prejudiced if SIG is permitted to improperly narrow the scope of relevant issues before discovery has begun is Officer Fernandez. Considering the early stage of this case and the bearing these allegations have on

---

[5] *See Connell W. Trucking Co. v. Estes Express Lines*, No. EP-20-CV-312-KC, 2022 WL 21712355, at *5 (W.D. Tex. Nov. 30, 2022) (considering prejudice in the context of a discovery dispute, not whether to strike pleadings at the outset of the case); *Doe v. Roman Cath. Diocese of Galveston-Houston*, No. CIV.A. H-05-1047, 2006 WL 2413721, at *8 (S.D. Tex. Aug. 18, 2006) (granting motion to strike in part which was aimed at claims asserted in second amended complaint after court already dismissed claims after considering first motion to dismiss).

Officer Fernandez's properly-asserted claims against both SIG and CTC, SIG's motion to strike should be denied.

**B.    SIG's Motion to Partially Dismiss Plaintiff's Design Defect Claim Should Be Denied.**

SIG argues that Officer Fernandez's design defect claim should be partially denied because it offers a manual safety as an optional add-on feature to the P320. ECF 18, at 8–9. But contrary to SIG's broad-sweeping contention,[6] it is not dispositive or even "clear" that under Texas law the existence of an alternative design feature precludes Officer Fernandez's design defect claim as a matter of law.

For instance, in *Allen v. W.A. Virnau & Sons, Inc.,* an allegedly defective tractor caused a fatal injury. 28 S.W.3d 226, 229 (Tex. App.—Beaumont 2000, pet. denied).   The Beaumont Court of Appeals reversed summary judgment on the plaintiff's design defect claim because sufficient evidence established that optional safety features, including a seat belt and rollover protection system, were standard alternative features for the tractor, but were not required when it was purchased. *Id.* at 233; *see also Sears, Roebuck & Co. v. Kunze*, 996 S.W.2d 416, 421(Tex. App.— Beaumont 1999, pet. denied) (affirming judgment on design defect claim where evidence established that a lower blade guard was available as an optional safety

---

[6] SIG argues that "Texas law is clear" on this point but only cites a single intermediate appellate court case to it. ECF 18, at 9 (citing *Banzhaf v. ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180, 187 (Tex. App.—Eastland 2000, pet. denied)).

feature for defective saw); *Cook v. Caterpillar, Inc.*, 849 S.W.2d 434, 440 (Tex. App.—Amarillo 1993, writ denied) (permitting submission of defective design jury question where road grader was sold without optional outside rearview mirrors and turn signals).

Moreover, Officer Fernandez's allegations pertaining to the P320's lack of external safety go hand-in-hand with his allegations that the P320's design is defective because of its extremely light trigger pull. Am. Compl. ¶ 27 ("[T]he pertinent defects which SIG has failed to remedy include its extremely light trigger pull and the P320's lack of any external safeties[.]"), ¶¶ 43, 55, 65–66 ("design lacks an external safety capable of preventing unintentional discharges"). Officer Fernandez is permitted to plead alternative and inconsistent theories of liability.[7] Thus, he has properly pled in the alternative—and in anticipation of SIG's likely defense that the trigger *was* actuated—that the P320's design is defective due to its lack of an external safety in conjunction with its extremely light trigger pull.

The pertinent question under Texas law is whether a firearm was defectively designed because "the gun, as designed did not function as an ordinary consumer of firearms would have reasonably expected." *See Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 20, n. 6 (Tex. 2015) (citing TEX. CIV. PRAC. & REM. CODE § 82.006(b)). Regardless of whether the Subject Handgun injured Officer Fernandez by

---

[7] FED. R. CIV. P. 8(d)(2), (3).

spontaneously discharging, as he primarily argues, or whether it shot him as a result of some slight graze of the trigger, as he argues in the alternative, both scenarios involve a firearm discharging without an intentional trigger actuation in a manner that an ordinary consumer of firearms would not expect.

This is why *Banzhaf v. ADT Sec. Sys. Sw., Inc.,* 28 S.W.3d 180, 187 (Tex. App.—Eastland 2000, pet. denied) is distinguishable and not dispositive. There, the plaintiffs argued that ADT's security system was defective because a duress code was not a standard feature. *Id.* The court held that the system was not unreasonably dangerous without the duress code because the sporting goods store was permitted to choose the version of alarm system that was best suited to protect its products or its employees. *Id.* And there, the alarm system did not fail or malfunction in any way; it functioned exactly how an alarm system without a duress code was intended to function. *Id.*

To the contrary, here, the P320's capability of discharging, either spontaneously or with a slight graze of the trigger, goes beyond the bounds of ordinary consumer expectations for firearms. To the extent an external safety could have prevented Officer Fernandez's injury, if there is any evidence that the Subject Handgun fired due to a slight trigger graze, his design defect claim has been sufficiently stated and should be permitted to proceed to discovery. *See, e.g., Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1227 (6th Cir. 2025) (reversing district court's

exclusion of expert testimony opining that P320 was defectively designed due to its lack of external safeties).[8]

## C.   SIG's Motion to Dismiss Plaintiff's Manufacturing Defect Claim Should Be Denied.

In considering whether Officer Fernandez sufficiently stated his manufacturing defect claim, the Court should consider the entirety of the Amended Complaint. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23, (2007) (courts must consider a complaint in its entirety considering *all* of the facts alleged); Am. Compl. ¶ 39 (incorporating all allegations into each cause of action). Officer Fernandez has sufficiently stated a plausible manufacturing defect claim because the various design problems outlined in the Amended Complaint caused the "the Subject Handgun to discharge[] without any handling whatsoever or anyone pulling the trigger" contrary to SIG's intended design. *Id*. ¶ 46.

In *Am. Tobacco Co. v. Grinnell*, the Texas Supreme Court rejected a cigarette manufacturer's argument that the presence of pesticide residue was in essence a design defect claim and held there was a fact issue as to the plaintiffs' manufacturing defect claims. 951 S.W.2d 420, 434–35 (Tex. 1997). "[T]he fact that all cigarettes potentially contain pesticide residue does not transform the [plaintiffs']

---

[8] *Id*. (permissible expert opinion went in depth "about the design of the P320, how it is unreasonably dangerous without external safeties, and how the P320 is more likely than other commercially available firearms to fire inadvertently from jostling, side-pulls, and grazes.").

manufacturing defect claim into a design defect claim[.]" *Id*. at 434. "Although pesticide residue may be found in many if not all cigarettes, it is not an ingredient American intended to incorporate into its cigarettes." *Id*.  Thus, the Court held the existence of a manufacturing defect had not been conclusively negated. *Id*. at 435.

Similarly, here, though the defective aspects of the Subject Handgun that caused it to fire without a trigger pull may be found in many if not all P320s, SIG did not intend to incorporate those unreasonably dangerous characteristics into the Subject Handgun or any other P320. *See also Olympic Arms, Inc. v. Green*, 176 S.W.3d 567, 577–78 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (evidence supported manufacturing defect claim where gun barrel manufacturer used steel not strong enough to withstand pressure for its intended use).

Officer Fernandez sufficiently stated his manufacturing defect claim.

### D.   SIG's Motion to Dismiss Plaintiff's Marketing Defect Claim Should Be Denied.

#### 1.   Objection to Considering SIG's Website and Operator's Manual.

As an initial matter, Officer Fernandez objects to the Court's consideration of SIG's website and the purported P320 Operator's Manual – neither of which are attached to SIG's motion. *See generally* ECF 18. In considering a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to

10

the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (internal citation omitted); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (noting that court may consider attached documents "if they are referred to in the plaintiff's complaint *and* are central to her claim.") (emphasis added).

Here, neither the website nor the Operator's Manual meet either of these requirements. Neither are *attached* to the motion to dismiss or the Amended Complaint. *See* ECF 18, at 9, n. 3 (providing only a hyperlink to the P320-M18 product webpage and the Operator's Manual). And even if they were, consideration of these documents is still improper because the current versions of these documents are not central to Officer Fernandez's claims.[9]

In *Scanlan v. Texas A&M Univ.*, the Fifth Circuit held the district court erred by "going outside the plaintiffs' complaints" and considering a final report that was referenced in the plaintiffs' complaints. 343 F.3d 533, 537 (5th Cir. 2003). There, the defendant did not attach the final report to its motion, but instead only quoted it and provided an Internet cite to it. *Id*. at 536. The Court also held it could not take judicial notice of the report, and the report was not central to the plaintiffs' claims simply because it was referenced in their complaints. *Id*. at 537.

---

[9] *See Payne v. City of Houston, Texas*, No. 24-20150, 2025 WL 999085, at *2 (5th Cir. Apr. 3, 2025) (noting that document satisfies the centrality component when it is necessary to establish an element of one of the plaintiff's claims) (internal citation omitted).

11

SIG's invitation to consider matters outside of the Amended Complaint should be rejected here for the same reasons. SIG similarly fails to attach these documents and merely provides Internet citations to them. *See* ECF 18, at 9, n. 3. And, like the "defendant-created report" in *Scanlan*, the current versions of these documents is not information for which the Court may take judicial notice. *See Scanlan*, 343 F.3d at 537 (citing FED. R. EVID. 201(b)); *see also Payne*, 2025 WL 999085, at *1 (district court "may not take judicial notice of 'adjudicative facts' subject to reasonable dispute[.]").

The relevant contents of SIG's Operator's Manual is an adjudicative fact that is subject to reasonable dispute. It is solely within SIG's control and is an amorphous document that is revised frequently.[10] It is not a document for which the Court may take judicial notice—there is at least a fact issue as to what language appeared in the Operator's Manual and when. *See* FED. R. EVID. 201(b)(1), (2).[11]

The relevant warnings for purposes of establishing Officer Fernandez's marketing defect claim are those that existed at the time he purchased the Subject

---

[10] For instance, the Amended Complaint references a recent change in the P320 Operator's Manual. Am. Compl. ¶ 11 (referencing revision to Section 2.0.1 as stating: "The most effective safety is to carry your pistol without a round in the chamber[.]"). In the version cited in SIG's motion, this language is no longer anywhere to be found. *See generally* https://www.sigsauer.com/media/sigsauer/resources/OPERATORS_MANUAL_P320_8501909-01_REV08_LR.pdf (last visited Oct. 9, 2025).

[11] *Contra Blythe v. Bumbo Int'l Tr.*, No. 6:12-CV-36, 2013 WL 6190284, at *3 (S.D. Tex. Nov. 26, 2013) (holding expert report did not preclude entry of summary judgment in marketing defect case where there was "no dispute about what the warnings said or how they were displayed[.]"). Here, there *is* such a dispute.

Handgun. *See Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 480, 848 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (internal citations omitted) (second element of marketing defect claim is determined "at the time the product is marketed" and further explaining that "a defect must exist *at the time of sale or distribution*") (emphasis added).[12]

Based on the foregoing, the Court should not consider any page on SIG's website or the P320 Operating Manual in ruling on SIG's motion to dismiss because (i) they were not attached to the motion or the Amended Complaint and (ii) even if those documents were attached *and* were central to Officer Fernandez's claims, the relevant versions of the documents are those in the form in which they existed when the Subject Handgun was marketed and sold to him.

### 2. Officer Fernandez Sufficiently Stated His Marketing Defect Claim.

SIG argues that it had no duty to warn Officer Fernandez of the inherent risk of the P320s' propensity to spontaneously discharge because "[a] manufacturer owes no duty to warn a consumer of the 'obvious risks' associated with a product." *Olympic Arms, Inc. v. Green*, 176 S.W.3d 567, 577 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (internal citations omitted). However, the risk that a firearm will

---

[12] *See also Albaugh v. Wind Access Eng'g, Inc.*, No. 1:23-CV-00146, 2025 WL 1699195, at *5 (S.D. Tex. May 16, 2025) (claim requires that product is in defective condition "at time of sale").

spontaneously discharge or will discharge without an intentional trigger pull is not an "open and obvious" risk from the ordinary use of a firearm.

The cases SIG cites even recognize this distinction. *See e.g. Keene v. Sturm, Ruger & Co.*, 121 F. Supp. 2d 1063, 1068 (E.D. Tex. 2000) (distinguishing a handgun's normal function "to propel bullets with deadly force" from a handgun that would be defective because of some manufacturing or design problem like "a weak or improperly placed part, that would cause it to fire unexpectedly or otherwise malfunction."); *see also Perkins v. F.I.E. Corp.*, 762 F.2d 1250, 1275 (5th Cir. 1985) (distinguishing the handguns at issue, which functioned as intended during the commission of crimes, from handguns that may have "something wrong with them—such as a safety mechanism that fails under certain circumstances, a tendency to misfire, or trigger structure that can get caught on foreign objects and cause the gun to discharge unexpectedly[.]").[13] These are precisely the circumstances which form the basis of Officer Fernandez's claims, including his marketing defect claim. *See* Am. Compl. ¶¶ 1, 3–4, 27–28 (P320 "spontaneously discharges when it is being used as intended"), ¶¶ 49–52. Where, as here, a firearm has a tendency to misfire or

---

[13] All of the other cases SIG cites to support this contention are inapposite because they involve a firearm functioning as intended—*i.e.*, firing when a person, (albeit a child, criminal, or a suicidal individual), intentionally pulled the trigger.

discharge unexpectedly, a manufacturer has a duty to warn a consumer of this unique risk because the product is not functioning in its ordinary and foreseeable manner.[14]

For instance, in *Roberts v. Zev Techs., Inc.*, the plaintiff installed an aftermarket trigger kit to his Glock pistol which he claimed made the firearm more volatile and susceptible to inadvertent discharges. No. 1:15-CV-309 RP, 2015 WL 7454688, at *3 (W.D. Tex. Nov. 23, 2015). In considering his marketing defect claim, the court framed the issue as "whether Plaintiff's use of the [] trigger kit increased the risk of accidental discharge above and beyond the amount of risk incident to ordinary gun use." *Id.*, at *3. Taking the plaintiff's allegations as true, the court concluded that the trigger kit increased the risk of accidental discharges above an amount within the ordinary knowledge of the community and permitted plaintiff's marketing defect claim to proceed to discovery. *Id.*

Similarly, here, the risk that a P320 will spontaneously discharge while being properly carried and secured in a holster is a risk above and beyond the level of risk incident to ordinary gun use. SIG's contention that it had no duty to warn Officer Fernandez's of the P320's propensity to spontaneously discharge should be rejected because the danger that a firearm will discharge on its own without any trigger actuation, while fully secured in a holster, is not obvious. *See also Olympic Arms,*

---

[14] "[T]he inquiry whether a recognition of risk is within the ordinary knowledge common to the community is an objective standard." *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 183 (Tex. 2004) (internal citation omitted).

15

*Inc.*, 176 S.W.3d at 581 (holding manufacturer did not conclusively established its "common knowledge" defense where there was no evidence that an average person would have recognized the unique risk associated with assembling the manufacturer's rifle barrel with particular types of rifle cartridges).[15]

Here, Officer Fernandez sufficiently alleged that SIG's warnings were inadequate because not only did SIG fail to warn Officer Fernandez of the Subject Handgun's propensity to discharge without a trigger pull,[16] but SIG also touted its safety, claiming that the P320 would only fire once the trigger was pressed.[17]

Moreover, even if the Court considers the Operator's Manual in deciding whether Officer Fernandez has sufficiently stated his marketing defect claim, the current version of the Manual does not conclusively establish that SIG's warnings were adequate. *See also Harrison v. Medtronic, Inc.*, No. 22-10201, 2022 WL 17443711, at *3 (5th Cir. Dec. 6, 2022) ("Usually, the adequacy of a defendant's warning is a question of fact[.]").

Here, the inapplicable, current version of the Manual says nothing about the P320's propensity, or even its capability, to spontaneously discharge during normal carrying and use without trigger actuation. Rather, all of the alleged warnings

---

[15] "[C]ommon knowledge encompasses only those things so patently obvious and so well known to the community generally, that there can be no question or dispute concerning their existence." *Id*. at 577 (internal citation omitted).

[16] Am. Compl. ¶¶ 49–52.

[17] Am Compl. ¶ 4–5; *see Tellabs, Inc.*, 551 U.S. at 322–23 (courts must consider a complaint in its entirety).

pertaining to the risk of unintentional discharges are described in the context of circumstances that are not relevant to Officer Fernandez's claims. *See* ECF 18, at 15, n. 6 (citing Section 7.0, p. 54, which provides warnings when disassembling and clearing for maintenance and Section 8.0, p. 76, which provides warnings when adjusting the firearm for righthand or lefthand operation); *id.*, at 16, n. 8 (citing Section 1.0, p. 3, which expressly warns of unintentional discharges from "[c]areless and improper handling"). Accepting Officer Fernandez's allegations as true as required, *not one* of these circumstances existed when the Subject Handgun shot Officer Fernandez while being properly carried and fully secure in his holster.

Because Officer Fernandez sufficiently alleged that the Subject Handgun's defect created a risk not disclosed and not within ordinary consumer knowledge, SIG's motion to dismiss the marketing defect claim should be denied.

**E.    SIG's Motion to Dismiss Plaintiff's Gross Negligence Claim and Request for Exemplary Damages Should Be Denied.**

In seeking to dismiss his gross negligence claim, SIG either ignores or misconstrues Officer Fernandez's pleadings and purports to impose a higher standard than the law requires at this stage. To sufficiently *plead* the elements of gross negligence,[18] Officer Fernandez must allege SIG's negligence (i) involved an

---

[18] "Gross negligence is typically a question of fact and is therefore not well-suited for summary judgment—much less for a motion to dismiss." *Inthavong v. Roosa*, No. 4:21-CV-00366, 2021 WL 5999279, at *2 (S.D. Tex. Dec. 20, 2021) (internal citation omitted).

extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) SIG had subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(11).

As to the first element, SIG skips over the following allegation in the Amended Complaint:

> [T]here are approximately two million P320s in circulation . . . there have been at least 200 instances of the P320 spontaneously discharging without a trigger pull. This is approximately a 1 in 10,000 chance that this firearm will spontaneously discharge and hit a human being within the proximity of the weapon. Measuring this against the magnitude of harm caused by a gunshot wound—*i.e.*, the potential to cause serious injury or the loss of life to any adult or child near this gun—Defendants' above-referenced breaches and omissions involve an extreme degree of risk to others.

Am. Compl. ¶¶ 69, 72. As to the second element, the entirety of the Amended Complaint includes a plethora of facts that support Officer Fernandez's allegation that SIG had actual, subjective knowledge of the P320's defects. *Id*. ¶ 1 ("hundreds of other instances"), ¶ 6 (specific examples of litigation involving similar claims where P320 discharged while holstered), ¶ 7 (specific articles regarding the P320 beginning in 2021), ¶ 8 (major police departments banning the P320 beginning in 2017), ¶ 9 (SIG's PR strategy implosion), ¶ 11 (subsequent revision to P320 Manual warning to carry without a round in the chamber), ¶ 63 (SIG knowingly embarked

18

on marketing campaign to deceive the public by misstating or omitting critical facts known to it).

In arguing otherwise, SIG cites to distinguishable cases where the plaintiffs alleged "no facts" to support their gross negligence allegations,[19] or cases that considered the propriety of gross negligence *evidence* after the case had already been tried to a jury.[20] Officer Fernandez has pled what is required at this stage to survive a motion to dismiss. *Roberts*, 2015 WL 7454688, at *7 (denying motion to dismiss gross negligence claim and rejecting argument that plaintiff simply "regurgigate[d] elements"); *Inthavong*, 2021 WL 5999279, at *2 (denying motion to dismiss gross negligence claim and holding that even where pleading was "thin," it was sufficient to survive motion to dismiss).

Finally, SIG's contention that Officer Fernandez's gross negligence claim should fail because it is predicated on an ordinary negligence claim should be rejected outright. SIG has not even challenged all of the grounds on which Plaintiff's design defect and ordinary negligence claims are based. *Compare* ECF 18, at 6, 8–10 (expressly stating that SIG is only challenging design defect claim to the extent it is based on lack of external safeties) *with* Am. Compl. ¶¶ 43, 65–66 (alleging P320

---

[19] *See Williams v. Gen. Binding Corp.*, No. 3:23-CV-00850-K, 2024 WL 628850, at *5 (N.D. Tex. Feb. 14, 2024); *Albaugh v. Wind Access Eng'g, Inc.*, No. 1:23-CV-00146, 2025 WL 1699195, at *14 (S.D. Tex. May 16, 2025).

[20] *See* ECF 18–19 (citing *Johnson*, *U-Haul Int'l*, and *Nissan*). Contrary to SIG's contention, Officer Fernandez does allege the other lawsuits involve similar incidents. *See* Am. Compl. ¶ 6.

19

is defective in several other ways as basis for design defect and ordinary negligence claims).

Because Officer Fernandez sufficiently pled his gross negligence claim, his request for exemplary damages also survives dismissal. *Id*. ¶ 72 (incorporating gross negligence allegations); TEX. CIV. PRAC. & REM. CODE § 41.003(a) (gross negligence is basis for award of exemplary damages).

SIG's motion to dismiss Officer Fernadnez's gross negligence claim and request for exemplary damages should be denied.

## V.    CONCLUSION

For these reasons, the Court should (1) deny SIG's motion to strike portions of Officer Fernandez's First Amended Complaint; and (2) deny SIG's motion to partially dismiss Officer Fernandez's claims pursuant to FED. R. CIV. P. 12(b)(6). Alternatively, if any portion of SIG's motions are granted, Officer Fernandez respectfully requests that such motion be granted without prejudice allowing him the opportunity to replead.[21]

---

[21] *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Respectfully submitted,

**RUSTY HARDIN & ASSOCIATES, LLP**

 */s/ Rusty Hardin, Jr.*
Rusty Hardin, Jr.
State Bar No. 08972800
Federal ID 19424
Houston, Texas  77010
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800
rhardin@rustyhardin.com

***Attorney-in-Charge for***
***Plaintiff Richard Fernandez, Jr.***

**OF COUNSEL:**

**Joe Roden**
   State Bar No. 00794549
   Federal ID 20354
**Kendall Valenti Speer**
   State Bar No. 24077954
   Federal ID 2783343
**RUSTY HARDIN & ASSOCIATES, LLP**
1401 McKinney Street, Suite 2250
Houston, Texas  77010
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800
jroden@rustyhardin.com
kspeer@rustyhardin.com

        -and-

**J. Scott Siscoe**
   State Bar No. 00788426
   Federal ID 28219
**LAW OFFICE OF J. SCOTT SISCOE**
2215 County Road 391

21

Pearland, Texas 77581
Telephone: (281) 640-8000
Facsimile: (281) 727-0459
siscoelaw@sbcglobal.net

***Attorneys for Plaintiff***
***Richard Fernandez, Jr.***

# CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

 */s/ Kendall Valenti Speer*
Kendall Valenti Speer